John W. Leardi
Nicole P. Allocca
Frank X. Wukovits
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150

Leslie Howard
COHEN HOWARD, LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, NJ 07724
732-747-5202

*Counsel for Plaintiffs
and the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JEREMIAH REDSTONE, M.D., as an authorized representative and attorney-in-fact of his patient D.R., and WAYNE LEE, M.D., as an authorized representative and attorney-in-fact of his patient C.F., on behalf of themselves and on behalf of all others similarly situated, | Case No. 21-cv-19434 |
| *Plaintiffs,* | |
| - v. - | **CLASS ACTION COMPLAINT** |
| AETNA, INC. and AETNA LIFE INSURANCE COMPANY, | |
| *Defendants.* | |

Jeremiah Redstone, M.D. ("Dr. Redstone"), as an authorized representative and attorney-in-fact of his patient D.R.., and Wayne Lee, M.D. ("Dr. Lee"), as an authorized representative and attorney-in-fact of his patient C.F. (collectively, "Plaintiffs"), on behalf of themselves and on behalf of all others similarly situated, bring the following complaint against Defendants Aetna, Inc. and Aetna Life Insurance Company ("Aetna" or "Defendant"), as follows:

### NATURE OF THE ACTION

1.    Aetna is in the business of insuring and administering health plans, many of which

are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461 (the "Aetna Plans"). In that role, Aetna receives, reviews, and processes benefits claims for services rendered by in-network and out-of-network medical providers.

2.      Most of the Aetna Plans cover health care services received by insureds from either in-network ("INET") providers (who have entered into contracts with Aetna to provide services at discounted rates) or out-of-network ("ONET") providers (who are not contracted with Aetna and have not agreed to accept payments below their billed charges). Each such plan has provisions that specify how benefits will be determined by Aetna, generally setting an "Allowed Amount" or "Recognized Charge," which reflects the maximum amount in benefits to be paid under the Aetna Plan for a particular service.

3.      For INET services, the Recognized Charge is limited to the discounted rate agreed to by the INET providers. For ONET services, some plans specify that the Recognized Charge will be a specified percentage of the rates at which Medicare reimburses for the applicable services or other similar provision. Other plans provide that the ONET Recognized Charge will be the "Prevailing Charge" or a similar provision that is generally based on "usual, customary and reasonable" ("UCR") rates, or rates that represent what most other providers in the same geographic area would charge in the open market for the same treatment.

4.      Many of Aetna's Plans also participate in the National Advantage Program ("NAP"). Through NAP, Aetna contracts with several national third-party "NAP Vendors" to access their provider networks and contracted rates. These NAP Vendors include Multiplan and Beech Street, who administer third-party "rental" or "wrapper" networks. This case solely involves Aetna's plans that purport to reduce costs for plan sponsors and members by providing access to providers and contracted rates through NAP Vendors (Aetna's "NAP Plans").

5.      Aetna widely promotes the benefits of its NAP Plans in online literature. For example, Aetna publishes on its own website the following:

> **Does your member ID card have "NAP" on the front?**
> That stands for National Advantage™ Program. And it has benefits for you:
>
> - You can get discounts for out-of-network care from NAP providers. Your out-of-pocket costs may be less than your costs for seeing other providers who are out of network.
>
> - If you get care from an NAP provider, you won't get a balance bill. You will pay your usual cost sharing for out-of-network care.
>
> Check your most recent ID card to see whether your plan has the program. **Some plans that used to have NAP no longer have it.**

6.      Aetna and its representatives also widely disseminate written literature regarding its NAP Plans, including a NAP flyer that is titled "Savings on out-of-network care National Advantage™ Program," which represents the following:

> **It pays to visit doctors and hospitals in the program**
>
> Here's a way to save on out-of-pocket costs. It comes in handy when your health benefits and insurance plan:
>
> • Does **not** have a network of doctors and health care facilities, or
> • Has a network but lets you get care outside this network
>
> It's our National Advantage Program. Doctors and hospitals who participate in this program accept discounted rates.
> These discounted rates mean your coinsurance and other costs are based on a lower rate. And this can mean **savings for you**.

7.      For its NAP Plans, Aetna is required to pay providers who contract with its NAP

Vendors ("NAP Providers") at the rates set forth in the contracts between those providers and the NAP Vendor (the "NAP Rates") as a priority over any other payment methodology used by that Plan to calculate benefits for ONET services. NAP Rates are generally a negotiated percentage-based reduction from the provider's normal charges. In consideration for accepting payment at the NAP Rates from Aetna for covered services, NAP Providers must agree to not bill the patient for the difference between the provider's normal charge and the NAP Rate (i.e., no balance billing). To qualify for Aetna's contracted NAP Rates, the expense must be covered under the plan and the provider must submit the charge to process at the NAP Rate before billing the member directly.

8. Nevertheless, Aetna routinely and consistently fails to reimburse NAP Providers at the NAP Rates for services rendered to Aetna members covered under NAP Plans. Through this conduct, Aetna violated its obligations under ERISA. This results in NAP providers being underpaid, insureds having increased monetary responsibility for the services at issue, and Aetna (and in some instances, its self-insured clients) benefitting financially from the underpayment of these claims. Further, Aetna charges its plan sponsor clients "access fees" for the NAP program, which Aetna fails to properly administer for plan sponsors and their members. Based on its role in both administering benefits and benefitting financially from the underpayment of claims, Aetna has an inherent conflict of interest requiring heightened scrutiny of its actions.

9. Drs. Redstone and Lee, as the authorized representatives and attorneys-in-fact of their respective patients, bring this action on behalf of D.R. and C.F., as well as all other similarly-situated members of Aetna Plans whose claims for benefits were wrongfully denied based on Aetna's failure to reimburse NAP Providers at the NAP Rates for services rendered to Aetna members covered under NAP Plans.

## **THE PARTIES**

**A.    Dr. Redstone as an Authorized Representative and Attorney-in-Fact of his Patient D.R.**

10.    Dr. Redstone is a board-certified plastic surgeon. He is skilled in the latest, most advanced techniques in plastic surgery, including breast augmentation and reduction, abdominoplasty (tummy tuck), rhinoplasty (nose job), facelifts and eyelifts, as well as the full spectrum of injectables, such as Botox® Cosmetic and Juvéderm. Dr. Redstone's practice focuses on breast reconstruction and specializes in microsurgical applications, including the DIEP flap breast reconstruction. DIEP (Deep Inferior Epigastric Perforator) flap reconstruction is a type of breast reconstruction in which the patient's own tissue is used to create a new breast after a mastectomy. Skin, fat and tiny blood vessels are taken from the abdominal area and transferred to the chest without sacrificing any of the abdominal muscles.

11.    D.R. is a natural person who resides in Union, NJ and was insured through a NAP Plan administered by Aetna. D.R.'s benefit plan was sponsored by her employer, Springpoint Senior Living, and is therefore governed by ERISA. With respect to the claims asserted in this case on her behalf, D.R. executed a "Authorized Representative Request" in favor of Dr. Redstone, which is attached hereto as Exhibit 1 (redacted). D.R. also executed a "NEW JERSEY DURABLE POWER OF ATTORNEY" in favor of Dr. Redstone which is attached hereto as Exhibit 2 (redacted).

**B.    Dr. Lee as an Authorized Representative and Attorney-in-Fact of his Patient C.F.**

12.    Dr. Lee is a renowned plastic and reconstructive surgeon in the Tampa Bay, FL area. Dr. Lee is double board certified by the American Board of Plastic Surgery and the American Board of Surgery. He is an active member of American Society of Plastic Surgeons (ASPS) and is a Fellow of the American College of Surgeons. Dr. Lee was Valedictorian of his high school in

Madison, WI. He is a graduate of the University of Wisconsin-Madison, where he received a full academic excellence scholarship. He was accepted immediately into UW Medical School under the Medical Scholar's Program and completed his medical degree in 2000. He completed his general surgery residency at the University of Illinois-Chicago. It was during this time when his interests in plastic surgery naturally took shape. During a vacation month, he returned to his birth country of Taiwan to learn cutting edge micro and plastic surgery. Afterwards, he went on to complete a 3-year plastic and reconstructive surgery fellowship at the University of Florida. Dr. Lee's plastic surgery experience ranges from cosmetic surgeries of the face, breast, and body, to breast cancer reconstruction as well as revision surgeries.

13.     C.F. is a natural person who resides in Tampa, FL and was insured through a NAP Plan administered by Aetna. C.F.'s benefit plan was sponsored by her husband's employer, Comprehensive Health Management, Inc., and is therefore governed by ERISA. With respect to the claims asserted in this case on her behalf, C.F. executed a "ASSIGNMENT OF BENEFITS/DESIGNATED AUTHORIZED REPRESENTATIVE/LIMITED SPECIAL POWER OF ATTORNEY" in favor of Dr. Lee, which is attached hereto as Exhibit 3 (redacted). C.F. also executed a "LIMITED DURABLE POWER OF ATTORNEY" in favor of Dr. Lee which is attached hereto as Exhibit 4 (redacted).

**C.     Defendants Aetna, Inc. and Aetna Life Insurance Company.**

14.     Aetna, Inc. is a health insurance company incorporated under the laws of the Commonwealth of Pennsylvania with its registered office at 980 Jolly Road, Blue Bell, PA 19422, and with its corporate headquarters and principal place of business located at 151 Farmington Avenue, Hartford, CT 06156. Since November 28, 2018, the company has been a subsidiary of CVS Health. Either directly or through its wholly-owned and controlled subsidiaries, Aetna, Inc. issues and administers health insurance plans and is delegated responsibility to make benefit

determinations pursuant to those plans. As such, Aetna, Inc. is a fiduciary under ERISA regarding the claims at issue in this litigation.

15.     Aetna Life Insurance Company is a wholly-owned and controlled subsidiary of Aetna, Inc. that was established to fulfill the functions and purposes of Aetna, Inc. and to operate subject to the decisions and guidelines of Aetna, Inc. For example, D.R.'s plan identifies Aetna Life Insurance Company as the "Medical Program Administrator," pursuant to which it operates as the "Claims Administrator" under the plan. In this role, Aetna handles pre-certification procedures, case management, claims processing, and review of denied claims that are appealed, and provides customer service for all these functions. Aetna also sets the terms and conditions for benefit claims procedures (for example, establishing the Recognized Charge or determining whether a service is Medically Necessary) and manages provider networks. Thus, Aetna Life Insurance Company, acting directly and on behalf of and under the supervision and direction of Aetna, Inc., is also a fiduciary under ERISA regarding the claims at issue in this litigation.

## JURISDICTION AND VENUE

16.     Aetna's actions in administering employer-sponsored health care plans, including setting payment rates for ONET benefits under its NAP Plans, are governed by ERISA. Thus, subject-matter jurisdiction is appropriate over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

17.     Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) based on Dr. Redstone maintaining an office in New Jersey at 200 S Orange Ave, Suite 107, Livingston, NJ 07039. Venue is also appropriate under 29 U.S.C. § 1132(e)(2) because Defendants may be found here and are authorized to do business in New Jersey, either directly or through wholly owned and controlled subsidiaries.

18.     This Court has personal jurisdiction over Aetna because Aetna has substantial contacts with, and regularly conduct business in, New Jersey.

## FACTUAL ALLEGATIONS

**A.      Dr. Redstone's Claims and Appeals on Behalf of His Patient D.R.**

19.     D.R. is a 61-year-old Aetna member, with her health benefit plan sponsored by her employer, Springpoint Senior Living., but administered by Aetna.

20.     The insurance card D.R. presented to Dr. Redstone's office contains the NAP logo. And the Summary Plan Document ("SPD") summarizing the benefits available to M.D. under her plan at the time she sought care from Dr. Redstone specifically acknowledges the plan's participation in the NAP program as a NAP Plan: "If your ID card displays the National Advantage Program (NAP) logo, the recognized charge is the rate we have negotiated with your NAP provider. Your out-of-network cost sharing applies when you get care from NAP providers, except for emergency services. A NAP provider is a provider with whom we have a contract through any third party that is not an affiliate of Aetna or through the Coventry National or First Health Networks. However, a NAP provider listed in the NAP directory is not a network provider."

21.     Dr. Redstone is a NAP Provider by virtue of an August 1, 2011, agreement with Multiplan. That Agreement, among other things, sets Dr. Redstone's "Contract Rate" under the agreement at a set percentage of his billed charges and notes that Multiplan clients, such as Aetna through the NAP program, will honor the Contract Rate in exchange for Dr. Redstone's agreement not to balance bill NAP Plan members for the difference between his Contract Rate and his standard billed charges. Ergo, as a NAP Provider Dr. Redstone was entitled to be paid the NAP Rates, i.e., his Contract Rate with Multiplan, for any covered services provided to D.R., who was covered under a NAP Plan.

22.     On December 28, 2019, D.R. presented to Morristown Medical Center for pre-

authorized post-mastectomy breast reconstruction stemming, of course, from a prior history of and treatment for breast cancer., including a bilateral mastectomy. As a result, co-surgeons Dr. Redstone and Jordan Farkas, M.D., assisted by John Paul Tutela, M.D., performed bilateral DIEP flap micro surgical reconstruction. The DIEP Flap is a cutting-edge breast reconstruction procedure that uses a flap of complete tissue, blood vessels, skin and fat from a woman's lower abdomen as donor tissue. The flap is then transplanted to the chest where those removed blood vessels are reconnected to the vessels in the chest. The flap is then shaped into the new breast and the abdomen is surgically closed. The procedure requires two micro-surgeons and at times, both a first and second assist, working together in unison for approximately 8-12 hours. There are few surgeons with the proper training and skill to perform this complex procedure. Prior authorization was received from Aetna for the surgery under authorization number 136314801.

23.    Unfortunately, in August 2020 D.R. required a bilateral revisions and fat-grafting of her reconstructed breasts due to bilateral dog-ear deformity at the axilla and tail of the breast, decreased upper pole fullness, and indentation of tethered scar tissue. Dr. Redstone performed this revision surgery without a co-surgeon or an assistant surgeon. Prior authorization was received from Aetna for the surgery under authorization number 53216211.

24.    In all, Dr. Redstone submitted bills to Aetna on behalf of D.R. totaling $226,630. Aetna approved a those claims for payment, but only paid Dr. Redstone $20,149.23. Aetna's payment to Dr. Redstone represented less than 9% of his billed charges, which is far less than his Contract Rate with Multiplan as required by D.R.'s plan for the services Aetna deemed "covered."

25.    For the December 28, 2019, date of service, Dr. Redstone submitted appeals to Aetna on July 10, 2020, September 20, 2020, and October 7, 2020. In each appeal, Dr. Redstone referenced his Contract Rate with Multiplan as required by D.R.'s plan for the services Aetna

deemed "covered." In each instance, Aetna ignored Dr. Redstone's arguments, and upheld its prior payment determinations based on Dr. Redstone's ONET status with Aetna.

26.     For the August 17, 2020, date of service, Dr. Redstone submitted appeals to Aetna on April 15, 2021, and May 27, 2021. In each appeal, Dr. Redstone referenced his Contract Rate with Multiplan as required by D.R.'s plan for the services Aetna deemed "covered." In each instance, Aetna ignored Dr. Redstone's arguments, and upheld its prior payment determinations based on Dr. Redstone's ONET status with Aetna.

27.     Thus, any administrative remedies that may be required to be pursued under ERISA have, therefore, been exhausted, should be deemed exhausted under applicable regulations, or would be futile under the circumstances, and are therefore excused as it related to Dr. Redstone's pursuit of benefits on behalf of his patient D.R.

28.     If Aetna's failure to reimburse Dr. Redstone at his Contract Rate with Multiplan as required by D.R.'s plan for the services Aetna deemed "covered" is permitted to stand, D.R. will be deprived of the protection from balance-billing set forth in her Aetna NAP Plan when services are provided by NAP Provider and Aetna pays that NAP Provider at his/her Contract Rate.

**B.      Dr. Lee's Claims and Appeals on Behalf of His Patient C.F.**

29.     C.F. is a 54-year-old Aetna member, with her health benefit plan sponsored by her husband's employer, Comprehensive Health Management, Inc., but administered by Aetna.

30.     The insurance card C.F. presented to Dr. Lee's office contains the NAP logo and the Beech Street logo. And the Summary Plan Document ("SPD") summarizing the benefits available to C.F. under her plan at the time she sought care from Dr. Lee specifically acknowledges the plan's participation in the NAP program as a NAP Plan: "If your ID card displays the National Advantage Program (NAP) logo your cost may be lower when you get care from a NAP provider. . . . If NAP does not apply to you, the recognized charge for specific services or supplies

will be the out-of-network plan rate set forth in the above chart."

31.    Dr. Lee is a NAP Provider by virtue of a April 15, 2012, agreement with Multiplan. That Agreement, among other things, sets Dr. Lee's "Contract Rate" under the agreement at a set percentage of his billed charges and notes that Multiplan clients, such as Aetna through the NAP program, will honor the Contract Rate in exchange for Dr. Lee's agreement not to balance bill NAP Plan members for the difference between his Contract Rate and his standard billed charges. Ergo, as a NAP Provider Dr. Lee was entitled to be paid the NAP Rates, i.e., his Contract Rate with Multiplan, for any covered services provided to D.R., who was covered under a NAP Plan.

32.    In late 2018, C.F. was diagnosed with right breast cancer. On February 14, 2019, she underwent bilateral skin and nipple sparing mastectomy performed by Dr. Cox at Advent Health Tampa. Immediately thereafter, Dr. Lee performed bilateral tissue expander-based breast reconstruction. Dr. Redstone received prior authorization from Aetna under #02943140000000. C. F. then underwent follow-up procedures on March 20, 2019, and April 18, 2019.

33.    Following C.F.'s procedures, Dr. Lee submitted a claim to Aetna in the amount of $102,000 for his services to C.F. Aetna approved the claim for payment, but applied $5,559.37 to C.F.'s deductible, and made no payment to Dr. Lee. Aetna's credit against C.F. deductible represented less than 5% of Dr. Lee's billed charges, which is far less than his Contract Rate with Multiplan as required by C.F.'s plan for the services Aetna deemed "covered.

34.    On October 24, 2019, Dr. Lee, through counsel, submitted a "First Level Member Appeal" on behalf of C.F. specifically challenging Aetna's underpayment of the claims by refusing to process the claim pursuant to Dr. Lee's Contract Rate with Multiplan as required by C.F.'s NAP Plan. The appeal also included a copy of the Operative Report, and advanced several other independent bases why Aetna should have tendered additional benefits to C.F.

35.    On December 4, 2019, Aetna, inexplicably upheld its determination with respect to refusing to acknowledge the NAP Rate payable under C.F.'s plan. Specifically, Aetna's denial of C.F.'s appeal stated that "we have determined that the claim was processed correct. According to our provider database, Wayne Lee, MD is not listed with Aetna as an in-network provider under the plan. Therefore, benefits and/or reimbursement would be subject to the provisions and limitations set forth by the plan for out-of-network providers." Aetna's letter to Dr. Lee's counsel went on to quote from C.F.'s SPD, including the portion of the plan explaining that the Recognized Charge for NAP Providers is the NAP Rate, but did not address why Dr. Lee was not paid at the NAP Rates for the services Aetna approved for payment.

36.    On January 14, 2020, Dr. Lee, through counsel, submitted a "Second Level Member Appeal" on behalf of C.F., largely restating the many arguments made in the first appeal, but this time specifically referencing the plan language regarding NAP set forth in Aetna's response to the first appeal.

37.    On March 4, 2020, Aetna denial Dr. Lee's second appeal on behalf of C.F., again stating that "Access to vendor National Advantage Program (NAP) contracts has been removed on this plan and converted to a Medicare-based fee schedule for out-of-network providers." The letter then again purported to quote from C.F.'s SPD, but this time curiously omitted the language regarding NAP; which again, is referenced both in the SPD and on C.F. insurance card.

38.    On April 2, 2020, having exhausted all administrative remedies available to C.F. under her Aetna Plan, Dr. Lee, through counsel, submitted a "Pre-Litigation Demand" directly to Comprehensive Health Management, the Plan Sponsor of C.F.'s Aetna Plan. No response to this demand letter was ever received from either Aetna or the plan sponsor.

39.    Aetna's response to the second level appeal is without any basis. In response to a

request for the member's plan documents, Aetna forwarded a copy of the Choose POS 11 Medical

Plan Booklet (the "Booklet"). The Booklet sets forth the plan effective date as January 1, 2019,

and the plan issue date as February 20, 2019. The dates of service for the claims referenced above

began on February 14, 2019, after the plan effective date of January 1, 2019, and before the plan

issue date of February 20, 2019. Page 92 of the Booklet specifically references the NAP program.

Clearly, the NAP program was part of C.F.'s plan on February 14, 2019, and Aetna failed to

administer benefits in accordance with that Plan. Further, in response to subsequent claims

submitted for subsequent dates of service for ongoing care from breast reconstruction from breast

cancer, Aetna confirmed that the NAP program was part of C.F.'s plan.

40.    Thus, any administrative remedies that may be required to be pursued under ERISA

have, therefore, been exhausted, should be deemed exhausted under applicable regulations, or

would be futile under the circumstances, and are therefore excused as it related to Dr. Lee's pursuit

of benefits on behalf of his patient C.F.

41.    If Aetna's failure to reimburse Dr. Lee at his Contract Rate with Multiplan as

required by C.F.'s plan for the services Aetna deemed "covered" is permitted to stand, C.F. will

be will be deprived of the protection from balance-billing set forth in her Aetna NAP Plan when

services are provided by NAP Provider and Aetna pays that NAP Provider at his/her Contract Rate.

## CLASS ALLEGATIONS

42.    Aetna has adopted and applies internal policies for calculating benefits for ONET

services provided by NAP Providers that contrary to the terms and conditions of the applicable

NAP Plans and in violation of ERISA. Based on information and belief, Plaintiffs' claims were

not subject to unique policies, but serve as a representative example of many insureds and their

NAP Providers whose claims are improperly paid by Aetna.

43.    Plaintiffs, as the authorized representatives and attorneys-in-fact of their patients

D.R. and C.F., respectively, therefore bring claims on behalf of a class defined as:

> All persons in the United States who were insured under an ERISA health insurance plan issued and/or administered by Aetna which participates in the National Advantage Program ("NAP"), and who submitted a benefit claim, or had a benefit claim submitted on their behalf, which was processed by Aetna at any time within the applicable statute of limitations and for which the allowed amount as determined by Aetna was lower than the NAP Rate specified under the Aetna plan.

44. The members of this proposed Class are so numerous as to make joinder of all members impractical. Although the precise numbers are currently known only to Aetna, Aetna is one of the largest insurance companies in the Aetna States and administers claims on behalf of millions of insureds. It can therefore reasonably be concluded that, at a minimum, thousands of insureds and their NAP Providers are impacted by these practices.

45. There are questions of law or fact common to the class, including but not limited to whether, in setting the allowed amounts for ONET services provided by NAP Providers under its NAP Plans, Aetna may ignore the NAP Rates.

46. The claims of Plaintiffs, as the authorized representatives and attorneys-in-fact of their patients D.R. and C.F., are typical of the class claims. Each of the benefit claims at issue here were underpaid because of Aetna's refusal to recognize NAP Rates for services rendered by NAP Providers for Aetna members covered under NAP Plans; this is precisely the nature of the claim asserted in this action on behalf of the putative Class.

47. Plaintiffs, as the authorized representatives and attorneys-in-fact of their patients D.R. and C.F., will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims, and has no interests antagonistic to or in conflict with those of the Class.

48. Aetna has acted on grounds that apply generally to the class, as Aetna has a set

policy applicable to "most" of its plans. As a result, enjoining Aetna from applying internal policies which are contrary to Plan terms and requiring it to make proper benefit determinations when processing NAP claims would be appropriate, and, as detailed below, is part of the relief sought.

49.     Questions of law or fact common to the Class members predominate over any questions particular to individual class members. The overriding common question is whether, in setting the allowed amounts for ONET services provided by NAP Providers under its NAP Plans, Aetna may ignore the NAP Rates. Once the Court has determined the correct formula that Aetna must apply under its NAP Plan terms for setting NAP reimbursements, the specific amount Aetna owes to class members under that formula can be determined formulaically.

50.     In its role as a claims administrator for the plans at issue, and in serving as an ERISA fiduciary, Aetna maintains records of when and how it receives, processes, and pays or refuses to pay claims for ONET treatment. Aetna also maintains records with respect to which of its plans participate in the NAP program, and what providers are contracted with its NAP vendor partners, such as Multiplan and Beech Street. Accordingly, the members of the Class could be readily and objectively ascertained through use of Aetna's records.

### COUNT I
### (CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(1)(B))

51.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

52.     This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

53.     Aetna systematically violated the terms of the Class members' ERISA plans by setting the allowed amounts for ONET services below the NAP rates negotiated with Plaintiffs and members of the Putative Class, causing the plans to pay less in benefits than the plan terms required.

**COUNT II**
**(CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(3)(A))**

54.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

55.    This count is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), to enjoin Aetna's acts and practices, as detailed herein. Plaintiff brings this claim only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

56.    Aetna systematically violated ERISA and the terms of the Class members' ERISA plans by setting the allowed amounts for ONET services below the NAP rates negotiated with Plaintiffs and members of the Putative Class.

**COUNT III**
**(CLAIM FOR RELIEF UNDER ERISA, 29 U.S.C. § 1132(a)(3)(B))**

57.    Plaintiff incorporates by reference the preceding paragraphs as though such paragraphs were fully stated herein.

58.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B), to obtain appropriate equitable relief to redress Aetna's violation of ERISA and of its NAP plans. Plaintiffs bring this claim only to the extent that the Court finds that the equitable relief sought is unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(3)(A).

59.    By engaging in the misconduct described herein, Aetna was unjustly enriched in two ways: first, with regard to fully-insured plans or plans that include a stop-loss provision requiring Aetna to pay all benefits above a certain threshold, Aetna avoided paying benefits out of its own funds and/or the funds of its corporate affiliates; second, with regard to other self-funded plans, Aetna charged its corporate customers fees for serving as claims administrator while improperly denying benefits based on invalid reimbursement policies as detailed herein, and also

lowered costs for its corporate customers, allowing Aetna to retain current customers and expand its business to new customers.

60.     It would be inequitable to allow Aetna to retain these benefits, considering Aetna's misconduct. Thus, Plaintiff and the Class are entitled to appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge, or other basis, pursuant to 29 U.S.C. § 1132(a)(3)(B).

**WHEREFORE**, Plaintiffs demand judgment in their favor against Aetna as follows:

A.      Certifying the Class and appointing Plaintiffs as Class Representatives;

B.      Declaring that Aetna violated its legal obligations in the manner described herein;

C.      Ordering Aetna to repay all class members, with interest, for the amount of benefits denied as a result of Aetna's ERISA violations as alleged herein or, alternatively, ordering Aetna to reprocess all wrongfully denied appeals in compliance with plan terms and without the improper reductions described herein;

D.      As an alternative remedy, ordering Aetna to make an equitable payment to Plaintiffs and members of the Class;

E.      Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

F.      Granting such other and further relief as is just and proper.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 AND 40.1

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action. In addition, I recognize a continuing obligation during this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, inter alia, injunctive relief.

Dated: October 29, 2021                    Respectfully submitted,

　*/s/ John W. Leardi*　　　　
John W. Leardi
Nicole P. Allocca
Frank X. Wukovits
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150

Leslie Howard
COHEN HOWARD, LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, NJ 07724
732-747-5202

**Exhibit 1**

**aetna** **Authorized Representative Request**

[FAX Number

Member Name
REDACTED

IAetna ID Number
REDACTED

Prov der of Serv ce
**Jeremiah Redstone MD**

Name and Dates of Serv ce  or Proposed Serv ce
10/28/2019  & 8/17/2020

Doreen Reid
I — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — — • do hereby name
*Print the name of the member who is receiving the service or supply*
**Redstone MD / Cohen Howard**

*Print the name of the person who is being authorized to act on the member's behalf*

to act as my author zed representat ve  n request ng *(check one)* ___ a comp a nt or ___ X an appea  from Aetna regard ng
the above-noted serv ce or proposed serv ce.

**IMPORTANT: Your signature below means that you understand and agree to the following:**

- In conjunct on w th th s *(check one)* ___ comp a nt or ___ appea , Aetna may d sc ose Protected Hea th Informat on ("PHI") to the above-named author zed representat ve ("Representat ve").

- **The PHI disclosed pursuant to this authorization may include diagnosis and treatment information, including information pertaining to chronic diseases, behavioral health conditions, alcohol or substance abuse, communicable diseases, sexually-transmitted diseases, HIV/AIDS, and/or genetic marker  information.**

- Informat on d sc osed pursuant to th s author zat on may be red sc osed by the Representat ve and may no  onger be protected by federa  or state pr vacy regu at ons.

- If you wou d  ke to pursue *(check one)*  a comp a nt or an appea , at the Representat ve's request, but do **not** want the Representat ve to rece ve any PHI or other  nformat on re ated to the *(check one)* ___ comp a nt or ___ appea ,  nc ud ng the *(check one)* ___ comp a nt or __  appea , dec s on, you may  nd cate that cho ce by check ng the box on the s gnature  ne be ow.

- Your ab  ty to enro   n an Aetna p an, and your e g b  ty for benef ts and payment for serv ces, w   not be affected  f you do not s gn th s form. However, w thout your s gnature, we cannot process the *(check one)* ___ comp a nt or __  appea ,  n t ated by the Representat ve.

- Th s author zat on s on y va  d for the durat on of the *(check one)* ___ comp a nt or ___ appea . If you s gn th s form, you may revoke the author zat on at any t me by not fy ng Aetna  n wr t ng at the address above. Revok ng th s author zat on w   not have any effect on act ons that Aetna took  n re ance on the author zat on before we rece ved the  not f cat on.

___ P ease accept th s *(check one)* ___ comp a nt or ___  appea , from my representat ve on my beha f; however, forward a
nformat on re ated to th s *(check one)* ___ comp a nt or ___ appea ,  nc ud ng the *(check one)* ___ comp a nt or ___ appea
dec s on and any request you may have for add t ona  nformat on, to my attent on on y.

S gnature     REDACTED

Date
7/14/2020

Pr nt Name
REDACTED

**If person signing this Authorization is not the Member,** descr be re at onsh p to the Member ( .e. Parent, Lega
Representat ve)

Legal Representatives signing this authorization on behalf of a Member must furnish a copy of a health care power of attorney  or other relevant document that grants the applicable legal authority

GR-68910 (4-13)

**<u>Exhibit 2</u>**

**NEW JERSEY DURABLE POWER OF ATTORNEY**

**OF**

REDACTED

**NOTICE:** The powers granted in this document are broad. They are explained in the Revised Durable Power of Attorney Act. If you have questions about this document, you are encouraged to obtain competent legal advice. This document **does not** authorize anyone to make medical or healthcare decisions for you. You may revoke this durable power of attorney if you later wish to do so. This durable power of attorney is effective immediately and shall not be affected by subsequent disability or incapacity of the principal or lapse of time. This durable power of attorney is terminated by (1) my death; (2) the death of the attorney-in-fact named below in the first paragraph of this instrument; or (3) the occurrence of an event described in N.J.S.A. 46:2B-8.5 or 46:2B-8.10.

I, REDACTED "Principal") with an address of

REDACTED , make, constitute, and appoint

STREET ADDRESS                CITY                STATE            ZIP CODE

**Jeremiah Redstone, M.D.** with an address of **Jeremiah Redstone, M.D., 200 South Orange Ave. Suite 107 Livingston, NJ 07039** as my attorney-in-fact.

**ARTICLE I**

I hereby give and grant unto my said attorney-in-fact full power and authority to act for me in any lawful way with respect to the powers enumerated in Article II of this instrument.

**ARTICLE II**

My attorney-in-fact is authorized to act for me in my name, place, and stead and may exercise any or all of the powers contained in this article.

The general powers I am granting unto my attorney-in-fact are all of those powers needed, desired, or which could prove beneficial, expedient, and/or useful, to enable my attorney-in-fact to lessen and/or eliminate any indebtedness, obligation, or financial liability owed by me to **Jeremiah Redstone, MD, PC** through recovering reimbursement and/or receiving monies from any party from which I am owed monies and/or from which I could seek to receive monies from that is in any way related to the healthcare services that have been and/or will be rendered to me by **Jeremiah Redstone, MD, PC** and its employees, members, and owner(s), at any time, and includes, but is not limited to, seeking past due contractual benefits, penalties, interest, and reimbursement of legal fees, costs, and expenses that I and/or my attorney-in-fact incurred.

**2.1 Release and Receive Personal Health Information ("PHI").** With regard to disclosure of my PHI, my attorney in-fact shall have the **power** to: (1) disclose any and all of my PHI, using reasonable care, as needed in the service of exercising, fulfilling, and/or in furthering the general purpose of this instrument through the exercising of those powers granted herein; and (2) receive any and all documents containing my PHI necessary to further the general purpose of this instrument through the exercising of those powers granted herein from any party including, but not limited to, my employer, plan administrator, plan sponsor, claims administrator, third-party administrator, claims repricer, other healthcare professionals, and the other such similar parties or entities.

**2.2 Requesting Insurance Plan and Related Documents.** With regard to requests for certain documents, my attorney-in-fact shall have the **power** to: (1) request and receive those documents so specified at 29 U.S.C. § 1024(b)(4), for example, my plan's summary plan description, trust agreement, and instruments under which the plan is established or operated; and (2) request and receive any other documents which I am entitled to request and receive from any party.

**2.3 Appeals, Advisory Opinions, and Other Remedies.** With regard to any appeals, advisory opinions, and other remedies available to me under my insurance plan, applicable state, federal, or other law, statute, rule, case law, or regulation, my attorney-in-fact has the **power**, but not the obligation, to: (1) perform and/or engage in any and all required or voluntary appeals under my health insurance plan; and (2) perform and/or engage in any all available remedies, including, but not limited, referrals to the

appropriate administrative agency, e.g., the Department of Banking and Insurance or the United States Department of Labor, file complaints, and seek advisory opinions.

**2.4 Claims and Litigation.** With regard to claims and litigation that are in any way related to the healthcare services that have been and/or will be rendered to me by **Jeremiah Redstone, MD, PC** and its employees, members, and owner(s), at any time, my attorney-in-fact has the **power** to: (1) assert and prosecute before a court or administrative agency a claim, a claim for relief, a counterclaim, or an offset or defend against an individual, a legal entity, or a government, including suits to recover property or other things of value, to recover damages sustained by me, to eliminate or modify tax liability, or to seek an injunction, specific performance, or other relief; (2) bring an action to determine adverse claims, intervene in an action or litigation, and act as amicus curiae; (3) in connection with an action or litigation, procure an attachment, garnishment, libel, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree; (4) in connection with an action or litigation, perform any lawful act I could perform, including acceptance of tender, offer of judgment, admission of facts, submission of a controversy on an agreed statement of facts, consent to examination before trial, and bind me in litigation, provided, however, that my attorney-in-fact cannot sign an affidavit attesting to my personal knowledge; (5) submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation; (6) waive the issuance and service of process on me, accept service of process, appear for me, designate persons on whom process directed to me may be served, execute and file or deliver stipulations on my behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, or receive and execute and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation; (7) pay a judgment against me or a settlement made in connection with a claim or litigation and receive and conserve money or any other thing of value paid in settlement of or as proceeds of a claim or litigation; and (8) do any and all those things that I could do in the claims or litigation process except as specifically excluded as specified above in **2.4(4)**.

**2.5 Attorney-in-fact's Choice of Legal Counsel or Other Representatives and Their Remuneration.** With regard to the exercise of any power otherwise set forth in this instrument, my attorney-in-fact has the **power** to: (1) obtain legal counsel and/or other representatives of their choice, without my approval or knowledge, as they see fit. In no event shall the costs associated with my attorney-in-fact's chosen legal counsel and/or other representatives become an additional source of indebtedness, obligation, or financial liability owed by me. My attorney-in-fact's chosen legal counsel will not represent **Jeremiah Redstone, MD, PC** or its successor(s) in interest in any lawsuit, civil action, or adversarial proceeding against me or my heirs or my representatives.

**ARTICLE III**

The enumeration of particular powers under a general power set out in this instrument is not intended in any way to limit the more general statement of power granted, but rather is intended to be in addition thereto and by way of example thereof.

**ARTICLE IV**

My attorney-in-fact shall not be liable for any acts or decisions made in good faith and in conformity with the powers enumerated in this instrument. However, my attorney-in-fact shall not be relieved from liability for breach of duty committed dishonestly, with improper motive, or with reckless indifference to me or the purposes of this instrument.

Specifically, I wish to have it known that I understand, acknowledge, anticipate, and accept that my attorney-in-fact, in taking actions under this instrument to fulfil its general purpose, will do so with the aim of receiving monies owed to me so that said monies can be used to lessen and/or eliminate any indebtedness, obligation, or financial liability owed by me to **Jeremiah Redstone, MD, PC** and that my attorney-in-fact has a financial interest in **Jeremiah Redstone, MD, PC**.

Additionally, I explicitly state that my attorney-in-fact does not have any affirmative duty whatsoever to act or refrain from acting under this instrument or otherwise to (1) lessen and/or eliminate and indebtedness, obligation, or financial liability owed by me to **Jeremiah Redstone, MD, PC**; or (2) for any other purpose.

**ARTICLE V**

No attorney-in-fact acting hereunder shall be entitled to a fee for so acting and shall not be entitled to reimbursement of expenses reasonably incurred on my behalf pursuant to the authority granted in this power of attorney **except** as set forth in Article 2.5.

I am fully informed as to all the contents of this document and understand the full import of this grant of powers to my attorney-in-fact.

Signed on _____ 10 _____ 27 _____ 2021
                MONTH     DATE     YEAR

REDACTED

REDACTED , Principal
PRINT NAME

**WITNESS**

*Carla Aliaga*
                SIGN NAME

Carla Aliaga
                PRINT NAME

660 E 34th St. Paterson, NJ, 07513
STREET ADDRESS              CITY              STATE     ZIP CODE

Witness

**CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC**

STATE OF NEW JERSEY                )
                                   ) ss.
COUNTY OF  Essex                   )

BE IT REMEMBERED that on this 27th day of October, 2021, before me, the subscriber,
                              DATE              MONTH              YEAR personally appeared

REDACTED
_____ who, I am satisfied, is the person named in and
PRINCIPAL'S NAME

who executed the instrument, and thereupon they signed, sealed, and delivered the same as their act and deed, for the?

uses and purposes therein expressed.

NOTARY PUBLIC

My commission expires: 10/18/2023

JOEL BERNOR
Notary Public, State of New Jersey
My Commission Expires
October 18, 2023

Page 3 of 3

**Exhibit 3**

### ASSIGNMENT OF BENEFITS/DESIGNATED AUTHORIZED REPRESENTATIVE/LIMITED SPECIAL POWER OF ATTORNEY

It is our policy, for your convenience, as well as to facilitate payment, to file health benefit claims on your behalf. To enable your insurance policy or benefit plan to deal with us directly, please read the following, sign and print your name below and enter today's date.

Assignment of Benefits

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any penalties or equitable relief) under my health insurance policy or benefit plan to  Wayne Lee MD Plastic Surgery PLLC  and____Dr. Wayne Lee_____(collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service, including without limitation, the right of one or more of the Providers, or their attorney (or other representative) to (i) execute, in my name and on my behalf, any form, document or instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State laws, rules, regulations or requirements (collectively, "Laws"), (ii) pursue penalties for and exclusively on behalf of Providers  against any insurance policy or benefit plan for failure of the plan administrator (or other fiduciary) to timely produce or respond to requests (including appeals) for all information relating to any plan documents as required by any applicable Laws, (iii) to assert claims and initiate legal action for breach of fiduciary duty against and person or entity, and (iv) to endorse for me any checks made payable to me for benefits and claims collected toward my account.

In the event the insurance carrier responsible for making medical payments to Wayne Lee MD Plastic Surgery PLLC  and  Dr. Wayne Lee  for medical services rendered to me does not accept my assignment of benefit rights, or my assignment is challenged or deemed invalid, I execute this limited/ special power of attorney and appoint and authorize Provider and his/her/its attorney (or other representative) as my agent and attorney, in fact, to assert any and all of my benefit and non-benefit rights for and on my behalf, including, without limitation, to bring any appeal, pre-litigation demand, demand for  payment, arbitration, lawsuit, independent dispute resolution or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination and payment of benefits under any insurance policy or benefit plan. I agree that any recovery shall be applied to payment due my provider and attorney fees and costs. To this end, Provider has exclusive settlement authority.

Designated Authorized Representative

I hereby appoint as a Designated Authorized Representative each of my Providers and each of their respective assistant surgeons, physician assistants, teaching assistants, billing staff, lawyers (including the Law Offices of Cohen and Howard) or any other person or business that provides healthcare activity services as a "business associate" under the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and their respective designees (collectively referred to herein as an "Authorized Representative"). This authorization is intended to comply with all requirements of the Employment Retirement Income Security Act of 1974, as amended (ERISA") and any applicable State law.  Each Authorized Representative is granted the same rights which I have as a member or beneficiary under my insurance policy or benefit plan, including without limitation:

1. The right of my Authorized Representative to file claims for benefits on my behalf and directly receive payment for benefits and non-benefits under my insurance policy or benefit plan, including the right to penalties, interest and attorney fees.

2. The right of my Authorized Representative to communicate with insurers, plan fiduciaries, employers and plan and claim administrators relative to all my benefit information and protected health information ("PHI" as further defined under HIPAA) and to share and exchange such information with a "covered person" or "business associate" as those terms are defined under HIPAA.

3. The right of my Authorized Representative to send and receive follow-up information and obtain all documentation that ERISA or any State law requires to be provided to me, including, without limitation, plan documents, explanation of benefits, adverse benefit determinations, all relevant documents involving my claim, identity of all persons involved in determining my claim and all documents relied upon in making any determination as to the payment of any amount under the applicable plan documents.

4. The right of my Authorized Representative to file any internal or external member appeal for payment of benefits under any applicable insurance policy or benefit plan.

5. The right of my Authorized Representative to pursue any rights, claim or cause of action through pre-litigation demands, demands for payment, arbitration, independent dispute resolution or administrative proceeding, litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest and attorney fees.

Release of Private Health Information

It is specifically intended that any Provider or Authorized Representative is authorized and directed to provide and release my PHI for purposes of exercising all rights and benefits set forth in this Assignment of Benefits/Designated Authorized Representative authorization to any "covered person" or "business associate", including third-party payors, internal and external utilization review organizations, regulatory review entities and other organizations and/or companies that may/will assist with claims processing/reimbursement. I also direct any plan or claim administrator or plan sponsor to share all PHI with any Provider or Authorized Representative and not to inhibit the exercise of rights under my insurance policy or benefit plan by requiring any further authorization signed by me.

I understand that I remain fully responsible for any billed charges remaining due for services provided to me by a Provider, including co-pays, co-insurance and deductibles. If I receive any check or other payment from an insurance company or third-party payor for services rendered to me by a Provider, I will immediately endorse the check over to the Provider or otherwise make payment to the Provider for the amount of payment received from such insurance company or third-party payor. I agree that if the Provider is required to pursue collection efforts against me for these amounts, I will be responsible for all legal fees, interest and costs associated therewith.

This Assignment of Benefits/Designated Authorized Representative authorization/ Limited Special Power of Attorney shall remain in full force and effect for all current and future dates of service, until such time that all rights have been exercised under applicable Federal and State law as determined by Providers. I may revoke or withdraw this authority upon written notice to the Providers. In the event of any revocation, I will be responsible for payment of all outstanding amounts then due to the Providers.

Patient Name: REDACTED                    Date: 7/29/2019

Patient Signature: REDACTED

# aetna™ Authorized Representative Request

[FAX Number

Member Name
**REDACTED**

IAetna ID Number

Provider of Service **Wayne Lee MD Plastic Surgery PLLC**

Name and Dates of Service or Proposed Service

I ——————————————————————————— ⁕do hereby name

*Print the name of the member who is receiving the service or supply*
**Wayne Lee MD Plastic Surgery PLLC ; The Law Offices of Cohen & Howard, LLP**

*Print the name of the person who is being authorized to act on the member's behalf*

to act as my authorized representative in requesting *(check one)* ___ a complaint or ___ an appeal from Aetna regarding the above-noted service or proposed service.

**IMPORTANT: Your signature below means that you understand and agree to the following:**

- In conjunction with this *(check one)* complaint or appeal, Aetna may disclose Protected Health Information ("PHI") to the above-named authorized representative ("Representative").

- **The PHI disclosed pursuant to this authorization may include diagnosis and treatment information, including information pertaining to chronic diseases, behavioral health conditions, alcohol or substance abuse, communicable diseases, sexually-transmitted diseases, HIV/AIDS, and/or genetic marker information.**

- Information disclosed pursuant to this authorization may be redisclosed by the Representative and may no longer be protected by federal or state privacy regulations.

- If you would like to pursue *(check one)* a complaint or an appeal, at the Representative's request, but do **not** want the Representative to receive any PHI or other information related to the *(check one)* ___ complaint or ___ appeal, including the *(check one)* ___complaint or ___ appeal, decision, you may indicate that choice by checking the box on the signature line below.

- Your ability to enroll in an Aetna plan, and your eligibility for benefits and payment for services, will not be affected if you do not sign this form. However, without your signature, we cannot process the *(check one)* ___ complaint or ___ appeal, initiated by the Representative.

- This authorization is only valid for the duration of the *(check one)* ___complaint or ___appeal. If you sign this form, you may revoke the authorization at any time by notifying Aetna in writing at the address above. Revoking this authorization will not have any effect on actions that Aetna took in reliance on the authorization before we received the notification.

___ Please accept this *(check one)* ___complaint or ___ appeal, from my representative on my behalf; however, forward all information related to this *(check one)* ___complaint or ___appeal, including the *(check one)* ___ complaint or ___appeal decision and any request you may have for additional information, to my attention only.

Signature
**REDACTED**

IDate
7/29/2019

Print Name
**REDACTED**

**If person signing this Authorization is not the Member,** describe relationship to the Member (i.e. Parent, Legal Representative)

Legal Representatives signing this authorization on behalf of a Member must furnish a copy of a health care power of attorney, or other relevant document that grants the applicable legal authority.

GR-68910 (4-13)

**<u>Exhibit 4</u>**

## ASSIGNMENT OF INSURANCE BENEFITS
## AUTHORIZATION TO RELEASE INFORMATION
## AUTHORIZATION OF ERISA REPRESENTATIVE
## LIMITED DURABLE POWER OF ATTORNEY

### ASSIGNMENT OF INSURANCE BENEFITS

I have requested professional services from Wayne Lee MD Plastic Surgery, PLLC_ ("Practice") and/or Wayne Lee MD, ("Provider") on behalf of myself and/or my dependents. I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitled to Practice and/or Provider. I certify that the health insurance information that I provided to Practice and/or Provider is accurate as of the date set forth below and that I am responsible for keeping it updated.

I hereby authorize Practice and/or Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Practice and/or Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Practice and/or Provider directly for services rendered to me or my dependents. To the extent that my current policy prohibits direct payment to Practice and/or Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Practice and/or Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Practice and/or Provider.

### AUTHORIZATION TO RELEASE INFORMATION

I hereby authorize Practice and/or Provider to: (1) release any information necessary to my health benefit plan (or its administrator) regarding my illness and treatments; (2) process insurance claims generated during examination or treatment; and (3) allow a photocopy of my signature to be used to process insurance claims. This order will remain in effect until revoked by me in writing.

### AUTHORIZATION OF ERISA REPRESENTATIVE

I hereby designate, authorize, and convey to Practice and/or Provider to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause in action that I may have under such insurance policy and/or benefit plan; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including, but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.5031(b)(4)) with respect to any healthcare expense incurred as a result of the services I received from Provider and, to the extent permissible under the law, to claim on my behalf, such benefits, claims, or reimbursement, and any other applicable remedy, including fines.

Page 1 of 4

**LIMITED DURABLE POWER OF ATTORNEY**

**General Authority.** I execute this power of attorney and appoint Wayne Lee MD ("Agent") as my agent and authorize Wayne Lee MD with the power to take any all action Wayne Lee MD deems necessary, in their sole discretion, to appeal and/or collect payment for Wayne Lee MD Plastic Surgery, PLLC's medical and surgical services rendered to me. This power of attorney includes the power to commence and prosecute to final consummation or compromise, in my name, any appeals, suits, actions, arbitrations, and proceedings of any kind, under state and/or federal law (collectively "the Proceedings") against any person or entity including, without limitation, any fully or self-insured health insurance carrier, health insurance plan, governmental plan, automobile insurance carrier, workers' compensation carrier, liability insurance carrier, other insurance carrier, other plan, or payor, employer, corporation, limited liability company, individual, re-pricer, cost-containment company and/or administrator (collectively "the Responsible Parties").

I specifically authorize Wayne Lee MD  and give Wayne Lee MD  the power to retain an attorney of Wayne Lee MD's own choosing to commence and prosecute to final consummation or compromise, in my name, the Proceedings against the Responsible Parties. My Agent's chosen legal counsel will not represent Wayne Lee MD Plastic Surgery, PLLC or its successor(s) in interest in any lawsuit, civil action, or adversarial proceeding against me or my heirs or my representatives.

I further grant limited power of attorney to Wayne Lee MD  to receive and collect directly from the Responsible Parties any money or benefits due for the surgical, medical and/or healthcare services rendered to me by Wayne Lee MD Plastic Surgery, PLLC and hereby instruct the Responsible Parties to pay directly to Wayne Lee MD  any monies or benefits due for the surgical, medical and healthcare services rendered to me by for Wayne Lee MD Plastic Surgery, PLLC.

This Limited Durable Power of Attorney includes the power to conduct health care billing, recordkeeping, and payment, which authorizes my Agent to act as my representative pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), sections 1171 through 1179 of the Social Security Act, 42 U.S.C. Section 1320d, and applicable regulations, in order to take action as set forth herein, including but not limited to obtaining access to my health care information and to communicate with my health care providers.

Except as as otherwise provided in the Florida Power of Attorney Act (Chapter 709, Florida Statutes), my Agent may exercise these powers independently and without the approval of any court. My agent however, shall exercise all powers in a fiduciary capacity in good faith, as a prudent person would using reasonable care, skill, and caution.

**Duration**. This Limited Durable Power of Attorney is not terminated by subsequent incapacity of the principal except as provided in Chapter 709, Florida Statutes. This Limited Durable Power of Attorney is not affected by lapse of time but will terminate upon resolution of the insurance claim relating to the services provided to me by for Wayne Lee MD Plastic Surgery, PLLC.

Page 2 of 4

**Protection for Agent**. I understand, acknowledge and anticipate that many of my Agent's actions taken pursuant to specific grants of authority in this Limited Power of Attorney could involve them in conflicts of interest (created either by me or by my Agents), or call into question my Agent's apparent loyalty to me, or both. This might result from the totality of the circumstances facing the Agent at that time, or by virtue of the Agent's specific actions that might create the conflict of interest. I want my Agent to be free to act in my interest without concern over questionable lawsuits. Therefore, so long as my Agent acts in good faith, they will be protected as follows:

     a.    My Agent does not have an affirmative duty to act under this power of attorney and will not be liable for any claim or demand arising out of their good faith acts or omissions, except for actions or omissions resulting from my Agent's dishonesty, improper motive, or reckless indifference to the purposes of this power of attorney or my best interests.

     b.    My Agent may have competing interests for themselves or their affiliates, and I waive any express duty of loyalty imposed under section 709.2114(2), Florida Statutes.

**Third Parties**. Any third party to whom this Limited Durable Power of Attorney is presented may rely upon a written representation by my Agent stating, to the best of my Agent's knowledge and belief, that this power has not been revoked and that I am then living. No third party relying on this power and that written statement will be liable for any losses, damages, or claims caused by compliance with the action requested by my Agent, unless that third party has actual knowledge of my death or the revocation of this power.

A third party who improperly refuses to accept this power of attorney will be liable for damages, including reasonable attorney's fees and costs, incurred in any action or proceeding that confirms the validity of this power of attorney, as provided in Chapter 709, Florida Statutes.

**Governing Law.** This instrument is a Limited Durable Power of Attorney authorized by the provisions of the Florida Power of Attorney Act (Part II of Chapter 709 of the Florida Statutes), as it may be amended. The interpretation and effect of this Limited Durable Power of Attorney shall be governed by the laws of the State of Florida.

**Use of Copies**. As provided in section 709.2106, Florida Statutes, a photocopy or electronic copy of this power is sufficient for its exercise.

**Partial Invalidity**. If any part of this power of attorney is declared invalid or unenforceable, that decision will not affect the validity of the remaining parts.

In witness whereof, I have executed this Assignment of Insurance Benefits, Authorization to Release Information, Authorization of ERISA Representative , and Limited Durable Power of Attorney as of the date indicated below.

Witness 1 (Signature)

Kayla Yancey
Witness 1 (Print Name)

Witness 2 (Signature)

Jamie Yancey
Witness 2 (Print Name)

REDACTED
Patient Name

REDACTED
Patient Signature

10/8/2021
Date

## ACKNOWLEDGMENT

STATE OF FLORIDA )
COUNTY OF Hillsborough )

The foregoing instrument was acknowledged before me on October 8th, 20 21 , by means of  ✕  physical presence or _____ online notarization, by REDACTED Said person (check one) [   ] is personally known to me, [ ✕ ] produced a driver's license (current or issued by a state of the United States within the last five (5) years) as identification, or [   ] produced other identification, to wit:

(SEAL)

JAMIE STEVEN TUCKER YANCEY
Notary Public-State of Florida
Commission # GG 981138
My Commission Expires
April 23, 2024

Notary Public – State of Florida

Jamie Steven Tucker Yancey
Print Name of Notary
My Commission Expires: 04/23/2024

Page 4 of 4