## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JEREMIAH REDSTONE, M.D., as an authorized representative and attorney-in-fact of his patient D.R., and WAYNE LEE, M.D., as an authorized representative and attorney-in-fact of his patient C.F., on behalf of themselves and on behalf of all others similarly situated,

              Plaintiffs,

    v.

AETNA, INC. and AETNA LIFE INSURANCE COMPANY,

              Defendants.

Civil Action No.  21-19434 (JXN) (JBC)

**OPINION**

**NEALS**, District Judge:

Plaintiffs Jeremiah Redstone, M.D. ("Dr. Redstone") and Wayne Lee, M.D. ("Dr. Lee") (collectively "Plaintiffs") initiated this putative class action against defendants Aetna, Inc., and Aetna Life Insurance Company (collectively "Aetna" or "Defendants") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq.*, for Defendants' alleged underpayment of benefits under Plaintiffs' ERISA health care plans.[1] (ECF No. 1 ("Complaint" or "Compl.")). Before the Court is Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 17). Additionally, Aetna has filed a (1) Motion for Leave to File Notice of Supplemental Authority in Further Support of Aetna's Motion to Dismiss (ECF No. 35); and (2)

---

[1] The physician plaintiffs bring this action on behalf of D.R. and C.F. as "attorneys-in-fact," pursuant to written powers of attorney.

Motion for Leave to File Motion to Strike Plaintiffs' Improper Opposition to Aetna's Motion for Leave to File Notice of Supplemental Authority. (ECF No. 37).

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1132(e)(2). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Aetna's motion to dismiss (ECF No. 17) is **GRANTED in part**. Aetna's motion for leave to file notice of supplemental authority in further support of Aetna's motion to dismiss is **GRANTED**; Aetna's motion to strike Plaintiffs opposition to Aetna's motion for leave to file supplemental authority is **DENIED**.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>[2]

D.R. and C.F. are individuals who received health benefits through ERISA plans (the "Plans"), which were self-funded by their employers, administered by Aetna, and which purportedly participated in Aetna's National Advantage Program ("NAP") during the relevant time periods. (Compl. ¶¶ 9, 11, 13, 20, and 30).

Dr. Redstone is a board-certified plastic surgeon practicing in New Jersey and Dr. Lee is a double board-certified plastic surgeon practicing in Florida. (*Id.* at ¶¶ 10, 12).

According to the Complaint, Defendant Aetna, Inc., is a health insurance company that "[e]ither directly or through its wholly [ ] owned and controlled subsidiaries . . . issues and administers health insurance plans." (*Id.* at ¶ 14). Plaintiffs further allege "Aetna, Inc. is a fiduciary under ERISA regarding the claims at issue in this litigation." (*Id.*).

---

[2] The following factual allegations are taken from the Amended Complaint which are accepted as true. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010).

Defendant Aetna Life Insurance Company is a wholly owned and controlled subsidiary of Aetna, Inc. (*Id.* at ¶ 15). Aetna Life Insurance Company acts as the "Medical Program Administrator" and "Claims Administrator," which includes "pre-certification procedures, case management, claims processing, and review of denied claims that are appealed, and provides customer service for all these functions. Aetna also sets the terms and conditions for benefit claims procedures . . . and manages provider networks." (*Id.*) According to the Complaint, "Aetna Life Insurance Company, acting directly and on behalf of and under the supervision and direction of Aetna, Inc., is also a fiduciary under ERISA regarding the claims at issue in this litigation." (*Id.*)

While covered by the plans, D.R. and C.F. each underwent a medical procedure allegedly performed by NAP providers. (*Id.* at ¶¶ 21-22, 31-32). Specifically, D.R. and C.F. underwent breast reconstruction surgeries as a part of their treatment for breast cancer. (*Id.* at ¶¶ 22, 32). According to the Complaint, these procedures were "covered" under the terms of the Plans. (*Id.* at ¶¶ 24, 33).

D.R. executed an "Authorized Representative Request" and a "New Jersey Durable Power of Attorney" ("POA") in favor of Dr. Redstone. (*Id.* at ¶ 11, Exs. 1, 2). C.F. also executed an "Assignment of Benefits/Designated Authorized Representative/Limited Special Power of Attorney" in favor of Dr. Lee. (*Id.* at ¶ 13, Exs. 3, 4).

Plaintiffs allege that both D.R. and C.F.'s surgeries were preauthorized by Aetna. (*Id.* at ¶¶ 22, 23, 32).

Following D.R.'s procedures, Dr. Redstone submitted invoices for his services to Aetna, totaling $226,630. (*Id.* at ¶ 24). Plaintiffs allege that "Aetna approved [] those claims for payment" however, only paid Dr. Redstone $20,149.23, "far less than [Dr. Redstone's] Contract Rate with Multiplan." (*Id.*).

3

Dr. Redstone submitted appeals to Aetna on July 10, 2020, September 20, 2020, and October 7, 2020. (*Id.* at ¶ 26). Aetna "upheld its prior payment determinations based on Dr. Redstone's ONET status with Aetna." (*Id.*)

Similarly, following C.F.'s procedure, Dr. Lee submitted invoices for his services to Aetna, totaling $102,000. (*Id.* at ¶ 33). Plaintiffs allege that "Aetna approved the claim for payment, but applied $5,559.37 to C.F.'s deductible, and made no payment to Dr. Lee." (*Id.*).

Dr. Lee, through counsel, submitted appeals to Aetna on October 24, 2019, and January 14, 2020. (*Id.* at ¶¶ 34, 36). Aetna similarly denied Dr. Lee's appeals. (*Id.* at ¶¶ 35, 37).

Plaintiffs allege that due to Aetna's failure to reimburse Dr. Redstone and Dr. Lee, pursuant to their Contract Rates with Multiplan, D.R. and C.F. "will be deprived of the protection from balancing-billing . . . ."[3] (*Id.* at ¶¶ 28, 41).

Plaintiffs initiated this putative class action on October 29, 2021, bringing three claims under ERISA: (i) 29 U.S.C. § 1132(a)(1)(B) (Count I); (ii) 29 U.S.C. § 1132(a)(3)(A) (Count II); and (iii) 29 U.S.C. § 1132(a)(3)(B) (Count III). (*Id.* at ¶¶ 52, 55, 58). Plaintiffs purport to represent a putative class of individuals defined as:

> All persons in the United States who were insured under an ERISA health insurance plan issued and/or administered by Aetna which participates in the National Advantage Program ("NAP"), and who submitted a benefit claim, or had a benefit claim submitted on their behalf, which was processed by Aetna at any time within the applicable statute of limitations and for which the allowed amount

---

[3] This District has defined balance billing as follows:

> In the context of the healthcare industry, balance billing is the practice by a medical provider of billing a patient for the difference between the provider's actual charge and the amount reimbursed under the patient's health insurance benefits plan. Under balance billing, the patient is financially responsible to the provider for his or her co-payment obligation under the plan, plus any amount of the actual charge that exceeds the covered amount under the plan.

*MHA, LLC v. Aetna Health, Inc.*, No. 122984, 2013 WL 705612, at *5 n.4 (D.N.J. Feb. 25, 2013).

4

as determined by Aetna was lower than the NAP Rate specified
under the Aetna plan.

(Compl., ¶ 43).

On January 17, 2022, Defendants filed the instant motion to dismiss. (ECF No. 17 ("Def.
Br.")). On March 11, 2022, Plaintiffs filed their opposition. (ECF No. 20 (Pls.' Br.")). On April
11, 2022, Defendants replied. (ECF No. 23 ("Def. Rep. Br.")).

On May 10, 2022, Plaintiffs filed a letter (ECF No. 24) seeking to supplement their
opposition by enclosing an opinion in *ATL. Neurosurgical Specialists P.A. v. United Healthcare
Grp. Inc.*, No. 20-13834, 2022 U.S. Dist. LEXIS 59796 (D.N.J. Mar. 31, 2016), which Plaintiffs
contended supported their standing argument. Defendants filed a May 12, 2022 letter requesting
that the Court disregard (ECF No. 24) as an improper sur-reply under Local Civil Rule 7.1(d)(6),
and which took a contrary view of *ATL. Neurosurgical Specialists P.A.* (ECF No. 25).

On January 10, 2023, Plaintiffs filed a second letter seeking to supplement their opposition
with a subsequent opinion in *ATL. Neurosurgical Specialists P.A.* (ECF No. 28). On January 20,
2023, Defendants filed a letter requesting that the Court disregard ECF Nos. 24 and 28 and *ATL.
Neurosurgical Specialists P.A.* (ECF No. 29).

On April 11, 2024, the Court granted Defendants' request not to consider ECF Nos. 24 and
28 due to Plaintiffs' failure to seek leave under Local Civil Rule 7.1(d)(6). (ECF No. 31). The
Court further administratively terminated Defendants' motion to dismiss, to be reinstated to the
active docket on May 28, 2024, and *sua sponte* granted each party the opportunity to file
supplemental briefing on the Article III standing issue in the interim. (*Id.*).

On May 13, 2024, Plaintiffs filed its supplemental brief. ("Pls.' Supp. Br.") (ECF No. 32).
On May 28, 2024, Defendants filed a responsive supplemental brief. ("Defs.' Supp. Br.") (ECF
No. 34).

On June 4, 2024, Defendants filed a Motion for Leave to File Notice of Supplemental Authority in Further Support of Aetna's Motion to Dismiss. (ECF No. 35). On June 17, 2024, Plaintiffs opposed. (ECF No. 36). In response, on June 25, 2024, Defendants filed a Motion for Leave to File Motion to Strike Plaintiffs' Improper Opposition to Aetna's Motion for Leave to File Notice of Supplemental Authority. (ECF No. 37). This matter is now ripe for consideration.

## II.    **LEGAL STANDARD**

### A. **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Challenges to Article III standing are brought pursuant to Rule 12(b)(1), "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted); *accord N. Jersey Brain & Spine Ctr.*, 801 F.3d at 371 n.3 ("Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter.").[4] There are two types of standing challenges under Rule 12(b)(1): "either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). The distinction determines, among other things, whether the court accepts as true the non-moving party's facts as alleged in the pleadings. *Id.* Here, Aetna's challenge is a facial challenge based on the Complaint's allegations.

---

[4] "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *See Enlightened Solutions, LLC v. United Behavioral Health*, No. 18-6672, 2018 WL 6381883, at *2 (D.N.J. Dec. 4, 2018) (quoting *North Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015)). "When, however, statutory limitations to sue are non-jurisdictional, such as when a party claims derivative standing to sue under ERISA § 502(a), a motion challenging such standing is 'properly filed under Rule 12(b)(6).'" *Id.* The Third Circuit explained that "a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6)." *North Jersey Brain & Spine Ctr.*, 801 F.3d at 371 n.3 (citing *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 n.7 (3d Cir. 2011)). *See also Hutchins by Tanish v. Teamsters Western Region and Local 177 Healthcare Plan*, Civ. No. 22-4583, 2023 WL 2859803, at *4 (D.N.J. Apr. 10, 2023) (courts apply the Rule 12(b)(6) standard when a defendant challenges a plaintiff's standing to bring an Employee Retirement Income Security Act ("ERISA") claim (citing *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 62 n.1 (3d Cir. 2019) ("[W]hether a party has derivative standing to file an ERISA claim 'involves a merits-based determination,' such that a motion to dismiss for lack of ERISA standing . . .is 'properly filed under Rule 12(b)(6)'"). *See also Cohen v. Horizon Blue Cross Blue Shield*, No. 13-3057, 2013 WL 5780815, at *6 n.2 (D.N.J. Oct. 25, 2013) ("The Court will analyze Horizon's challenge to Dr. Cohen's statutory standing under the standards applicable to Federal Rule of Civil Procedure 12(b)(6)") (citing *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 n. 7 (3d Cir. 2000) (distinguishing challenge to plaintiffs' standing for lack of injury in fact, which implicates subject matter jurisdiction under Article III and thus falls under Rule 12(b)(1), from a challenge concerning whether a plaintiff meets statutory prerequisites to bring suit)).

Article III standing elicits the following inquiry: whether plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As to the first element, "an injury in fact must be both concrete and particularized." *Id.* at 340 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000)). To be "concrete," an injury must "actually exist," that is, be "real, and not abstract." *Id.* (citations omitted); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that "traditional tangible harms, such as physical harms and monetary harms" qualify as concrete, as do certain "intangible harms" such as "reputational harms, disclosure of private information, and intrusion upon seclusion"). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 561 n.1).

### B. Motion to Dismiss for Failure to State a Claim

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief" and provide the defendant with "fair notice of what the claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotations and ellipses omitted). On a Rule 12(b)(6) motion, the "facts alleged must be taken as true" and dismissal is inappropriate where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). A complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine a complaint's sufficiency, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must "assume the[] veracity" of well-pleaded factual allegations and ascertain whether they plausibly "give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citations omitted).

## III.    DISCUSSION

### A.  Plaintiffs Meet the Article III Standing Requirements[5]

Aetna argues that Plaintiffs lack standing under Article III of the United States Constitution because they have not alleged that "they have suffered an injury" and that the alleged injury—that patient Plaintiffs "will be deprived of the protection against balance billing" is not sufficient. (Defs.' Br. at No. 9-10; Defs.' Supp. Br. at 1-2). Aetna posits that Dr. Redstone and Dr. Lee have not balanced billed D.R. or C.F. for the services rendered, so there is no actual injury, and Plaintiffs do not "face a cognizable imminent threat of economic harm." (Defs.' Br. at at 12-13; Defs.' Supp. Br. at 3).

This precise argument was recently addressed and rejected by a court in this District. *BrainBuilders, LLC v. Aetna Life Ins. Co.*, No. 17-03626, 2024 WL 358152, at *7 (D.N.J. Jan. 31, 2024). The *BrainBuilders, LLC* Court expressed:

> The Court finds little merit in Aetna's contention that the individual Plaintiffs, as participants or beneficiaries in Aetna's health benefit plans, lack standing to sue for benefits. Even if BrainBuilders, the out-of-network provider, has not yet billed the individual Plaintiffs for what Aetna refuses to cover, there is certainly the risk that this

---

[5] Plaintiffs contend the "focus here is on whether D.R. and C.F. have standing to pursue their claims, as opposed to their attorneys-in-fact, Drs. Redstone and Lee." (Pls.' Supp. Br. at 2 n. 2). This is incorrect. As Plaintiffs own citation to *Atlantic Neurosurgical Specialists P.A.* makes clear, the proper inquiry is whether the attorneys-in-fact have ERISA standing. *See Atlantic Neurosurgical Specialists P.A.*, 2022 WL 970317, at *8 (finding ERISA standing where proposed first amended complaint remedied flaw of prior complaint through individual doctors asserting claims on behalf of their patients pursuant to POAs).

might occur. Consequently, the individual Plaintiffs face the ongoing threat of a collectable debt.

*BrainBuilders, LLC*, 2024 WL 358152, at \*7 (citations omitted).

The *BrainBuilders* Court noted that other courts "'have recognized that an insured has standing when she alleges violations of an ERISA plan without having to prove that the insured paid the provider or was balance billed by the provider'" *BrainBuilders, LLC*, 2024 WL 358152, at \*7 (quoting *Peters v. Aetna, Inc.*, No. 15-00109, 2016 WL 4547151, at \*6 (W.D.N.C. Aug. 31, 2016) (collecting cases)). Further, that "[c]ourts in this District support this conclusion." *Id.* (citing *Atlantic Plastic & Hand Surgery, PA*, 2018 WL 5630030, at \*6 ("To the extent Anthem argues the Providers have not yet billed [the individual plaintiff] for the balance due, and therefore any potential injury is speculative, drawing all inferences in favor of Plaintiffs, the consequential liability [the individual plaintiff] faces is sufficient to constitute a concrete and particularized injury."); *Professional Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 14-4731, 2015 WL 5455820, at \*2 (D.N.J. Sept. 16, 2015) ("[T]he receipt of a lesser benefit than Horizon allegedly should have paid had it honored plan terms is a sufficiently concrete invasion of [the insured's] legally protected interest under ERISA and her plan to confer Article III standing.");[6] *Cohen*, 2013 WL 5780815, at \*7 ("Horizon's failure to pay the benefits allegedly due to Patient F.L., and Patient F.L.'s consequent liability to Dr. Cohen constitute a particularized injury sufficient to confer Article III standing."). Sister circuits support this conclusion. *See, e.g.*,

---

[6] Plaintiffs cite *Professional Orthopedic Associates, PA v. CareFirst BlueCross BlueShield*, No. 14-4486, 2015 WL 4025399, at \*5 (D.N.J. June 30, 2015), which they contend also supports the conclusion that Plaintiffs have adequately plead an injury in fact. (Pls.' Supp. Br. at 5 n.5). However, in *Professional Orthopedic Associates, PA*, "the complaint allege[d] that Patient GG is personally responsible for all medical charges" which led the court to determine that "the allegations that Defendants have failed to pay benefits allegedly due to Patient GG and that Patient GG is personally liable to POA and Dr. Cohen for the medical expenses incurred is sufficient to establish the existence of Article III standing." 2015 WL 4025399, at \*5. Here, the Complaint alleges D.R. and C.F. "will be deprived of the protection from balance-billing." (Compl., ¶¶ 28, 41). As such, Plaintiffs alleged injury is not directly analogous to the pleading in *Professional Orthopedic Associates, PA. Cf. BrainBuilders, LLC*, 2024 WL 358152 (Plaintiffs had standing to sue based on possibility of balance billing, ongoing threat of a collectable debt).

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) ("[T]he denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services."); *North Cypress Med. Ctr., Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014); *HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). The Court agrees with the *BrainBuilders* Court's Article III standing analysis. *See also Sundown by Farkas v. Aetna Life Insurance Company*, No. 23-1905, 2024 WL 1051165, at *6 (E.D.N.Y. January 16, 2024) ("Sundown is not required to demonstrate monetary loss to establish Article III injury because he is contractually entitled to plan benefits and is thus injured . . . when a plan administrator fails to pay a healthcare provider in accordance with the terms of [his] benefits plan.") (cleaned up).[7]

The Court finds Aetna's Article III injury argument unavailing. *See Sundown by Farkas*, 2024 WL 1051165, at *11 (rejecting similar argument).

Aetna raises an additional contention—that as attorneys-in-fact, Dr. Redstone and Dr. Lee are precluded from balance billing D.R. and C.F. because of the fiduciary duties owed by Dr. Redstone and Dr. Lee as attorneys-in-fact. (Defs.' Br. at 14, 19; Defs.' Rep. Br. at 6-7; Defs.' Supp. Br. at 3). Plaintiffs counter that an attorney-in-fact's fiduciary duty does not preclude collecting a valid debt owed to them by the principal. (Pls.' Br. at 12-13).

Defendants cite to *Hocknell v. Metropolitan Life Ins. Co.*, 276 F. Supp. 3d 292, 297-98 (D.N.J. 2017). In *Hocknell*, an ERISA plan participant's niece who held a power of attorney sued the plan administrator for denying her as the beneficiary of her uncle's life insurance benefits upon

---

[7] The *Sundown* Court also noted "courts have held that an underpayment of benefits is sufficient to establish Article III injury even in cases where the providers had expressly absolved the patients of out-of-pocket liability for sums not covered by the plan administrators." *Sundown by Farkas*, 2024 WL 1051165, at *6 (citation omitted).

his death. *Hocknell*, 276 F. Supp. 3d at 293-94. While *Hocknell* was decided within the broad context of ERISA, it did not address standing at all, rather *Hocknell* dealt with N.J.S.A. 46:2B–8.13a, a statute that "codified a long-standing common law rule regarding a power of attorney's authority to provide gifts under a power of attorney document." *Id.* at 296. The Court—in determining that the insurance company did not abuse its discretion in denying benefits—stated that "[t]he purpose of N.J.S.A. 46:2B–8.13a is to preclude an attorney-in-fact from using her position of power to violate her fiduciary duty to the principal by transferring the principal's property to herself." *Id.* at 298. The circumstances in *Hocknell* are inapposite to the facts alleged here and does not stand for the proposition that an attorney in fact plaintiff lacks Article III standing.[8]

Additionally, Defendants fail to explain why payments from the principals—D.R. and C.F.—to Dr. Redstone and Dr. Lee would constitute "gifts" rather than debt payments.

Accordingly, the Court finds that the Plaintiffs have Article III standing to pursue their claims for unpaid and underpaid health benefits.

## B. Dr. Redstone and Dr. Lee Have ERISA Standing as Attorney's-in-Fact

Aetna asserts that D.R. and C.F.'s plans include an unambiguous anti-assignment cause, which Plaintiffs cannot circumvent. (Defs.' Br. at 15). In opposition, Plaintiffs argue that they have standing not under an assignment, but rather a power of attorney. (Pls.' Br. at 18-21).

Generally, "ERISA confers standing to sue on [behalf of] a plan 'participant,' 'beneficiary,' or 'fiduciary.'" *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 522 (D.N.J. 2013) (citing 29 U.S.C. § 1132(a)). "[H]ealth care providers . . . are not

---

[8] Defendants also cite *Chiron Recovery Ctr., LLC v. United Healthcare Servs.*, 2020 WL 3547047, at *3 (S.D. Fla. June 20, 2020), which discussed the possible conflict of interest issue in the ERISA context, where an attorney in fact would seek to collect payment from their patient. (Defs.' Supp. Br. at 3 (citing *Chiron Recovery Ctr.*, 2020 WL 3547047, at *3)). However, the *Chiron* Court did not decide "if, and/or to what extent, that relationship creates a conflict of interest and what (if any) remedy is required." *Chiron Recovery Ctr.*, 2020 WL 3547047, at *5.

'beneficiaries' or 'participants' as defined by ERISA, and thus these entities may not seek relief in their own name under the ERISA statute itself." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1185 (D.N.J. 1996).

In *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, the Third Circuit joined sister circuits in holding that unambiguous anti-assignment clauses in ERISA plans are valid and enforceable. 890 F.3d 445, 453 (3d Cir. 2018). In so finding, the Third Circuit noted that anti-assignment clauses do not preclude an insured from "grant[ing] a valid power of attorney" that "confer[s] on his agent the authority to assert [a] claim on his behalf." *Id.* at 455. The Third Circuit further explained that "[a]ssignments and powers of attorney differ in important respects with distinct consequences for the power of a plan trustee to contractually bind an insured." *Id.* at 454. Assignments "purport[ ] to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue on its own behalf," while powers of attorney do "'not transfer an ownership interest in the claim.'" *Id.* at 454-55 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)). Rather, a power of attorney "simply confers on the agent the authority to act 'on behalf of the principal.'" *Id.* at 455 (quoting *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 881 (3d Cir. 1984)).

The Third Circuit further addressed the issue in *Plastic Surgery Center, P.A. v. Aetna Life Insurance Co.*, 967 F.3d 218 (3d Cir. 2020). The Court acknowledged that "[w]hile we left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf, for most out-of-network providers, the rising prevalence of anti-assignment provisions signals the proverbial end of the road for relief under section 502(a)." *Id.* at 228-29 (citing *American Orthopedic*, 890 F.3d at 454-55).

After the Third Circuit's decisions in *American Orthopedic* and *Plastic Surgery*, district courts have recognized that a valid power of attorney can, under the appropriate circumstances, trump an unambiguous anti-assignment clause in an ERISA plan. *See, e.g., Abramson v. Aetna Life Ins. Co.*, No. 22-05092, 2023 WL 3199198, at *8 (D.N.J. May 2, 2023) (denying motion to dismiss on standing grounds where physician brought claim on behalf of patient through a duly authorized power of attorney); *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, No. 20-13834, 2022 WL 970317, at *8 (D.N.J. Mar. 31, 2022) (finding individual doctors had standing to sue as patients' attorneys-in-fact where complaint alleged they were proceeding under powers of attorney); *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. 19-8783, 2021 WL 3661326, at *5 (D.N.J. Aug. 18, 2021) (permitting case to proceed where the plaintiff-physicians asserted claims as attorneys-in-fact for patients in the healthcare providers' own names and where the complaint indicated the claims were brought on behalf of patients); *but see Lipani v. Aetna Life Ins. Co.*, No. 22-2634, 2023 WL 3092197, at *7 (D.N.J. Apr. 26, 2023) (granting motion to dismiss for lack of standing where complaint sought to enforce physician's rights, rather than the rights of his patient, and there was no allegation that the patient suffered any harm); *Tamburrino v. UnitedHealth Grp. Inc.*, No. 21-12766, 2022 WL 1213467, at *4-5 (D.N.J. Apr. 25, 2022) (finding the plaintiff-physician lacked ERISA standing where purported power of attorney allowed physician "to pursue B.W.'s claims as if they were his own, rather than on B.W.'s behalf" and was therefore an assignment of benefits); *O'Brien v. Aetna, Inc.*, No. 20-05479, 2021 WL 689113, at *3 (D.N.J. Feb. 23, 2021) (dismissing for lack of ERISA standing claims brought by out-of-network medical providers litigating "on their own behalf and for their own benefit,. . .not Chelsea D, the patient and beneficiary of the plan."); *Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-02595, 2021 WL 2549343, at *6 (D.N.J. June 21, 2021), *vacated by stipulation*, 2023

WL 2472403, at *1 (D.N.J. Feb. 8, 2023) (same) ("Plaintiffs also cannot establish ERISA standing by asserting a POA, because they are litigating in their own names, not on behalf of their patients."). *See also N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, No. 19-10735, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020) (cleaned up) (dismissing for lack of ERISA standing claims brought by healthcare provider pursuant to a power of attorney even though complaint caption stated healthcare provider was proceeding as an attorney in fact); *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062 at *2 (D.N.J. Aug. 27, 2018) (citations omitted) ("[A]n attorney-in-fact lacks standing to sue in her own name.").

Here, both Plaintiffs' plans contain an anti-assignment clause, which states that Aetna "will not accept an assignment to an out-of-network provider or facility under [the] plan." (*See* Declaration of Karen Linder ("Linder Decl.") Exs. B at 72, C at 80, ECF No. 17). This includes assignments for "benefits due[,] [t]he right to receive payments[,] or [a]ny claim [Plaintiffs] make for damages resulting from a breach, or alleged breach, of the terms of this plan." *Id.*[9] This anti-assignment language is unambiguous and similar Aetna anti-assignment clauses have been upheld by courts in this District. *See, e.g., Univ. Spine Ctr.*, 774 F. App'x at 62-64; *O'Brien*, 2021 WL 689113, at *3. *See also Enlightened Solutions*, 2018 WL 6381883, at *3, 5 (concluding that "[a] Claimant may not assign his/her Claim under the Plan to a Nonparticipating Provider without the Plan's express written consent" was an unambiguous anti-assignment clause). Plaintiffs neither challenge the enforceability of this anti-assignment provision nor allege that Defendants consented

---

[9] Because Aetna Health Management's Agreement with MultiPlan and D.R. and C.F.'s Medical Plan Booklets are "*integral to or explicitly relied* upon in the [C]omplaint[,]" the Court considers them "without converting" Aetna's motion to dismiss "into [a motion] for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). *See also Pinkney v. Meadville, Pa.*, No. 21-1051, 2022 WL 1616972, at *2 (3d Cir. May 23, 2022) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016)) (A court may look beyond the pleadings and "consider 'document[s] integral to or explicitly relied upon in the complaint,' or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'").

to an assignment. (*See generally*, Pls.' Br.; Defs.' Rep. Br. at 9 n.3). Notwithstanding, Plaintiffs

argue they have ERISA standing pursuant to POAs. (Pls.' Br. at 18-21).

### i. The POAs are Compliant with New Jersey Requirements

As an initial matter, the Court addresses the sufficiency of D.R. and C.F.'s power of

attorney documents.[10] The Court finds both powers of attorney are valid and comport with the

requirements of the New Jersey Revised Durable Power of Attorney Act, N.J. Stat. Ann. § 46:2B-

1, *et seq.* ("RDPAA"), which provides that "[a] power of attorney must be in writing, duly signed

and acknowledged in the manner set forth in [N.J. Stat. Ann. §] 46:14-2.1." N.J. Stat. Ann. §

46:2B-8.9. *Cf. Emami v. Aetna Life Insurance Co.*, No. 22-6115, 2023 WL 5370999, at *5 (D.N.J.

Aug. 22, 2023) (dismissing complaint due to Dr. Emami's failure to demonstrate the sufficiency

of the power of attorney so as to confer standing under New Jersey law, specifically noting failure

of POA to include notarized signature of attesting witness); *Emami v. Aetna Life Insurance Co.*,

No. 23-03878, 2024 WL 1715288, at *3 (D.N.J. April 22, 2024) (same); *Kayal v. Cigna Health &*

*Life Ins. Co.*, No. 23-03808, 2024 WL 2954283, at *3 (D.N.J. June 12, 2024) (same); *Enlightened*

*Solutions*, 2018 WL 6381883, at *6 (concluding document plaintiff sought to construe as power

of attorney failed to satisfy the requirements of a power of attorney under New Jersey law);

*American Orthopedic*, 890 F.3d at 454, n.9 (recognizing that appellant's power of attorney was

deficient under New Jersey law, specifically N.J. Stat. Ann. § 46:14-2.1(b), which requires "that

there be at least one witness" to a power of attorney). [11]

---

[10] The Court properly considers the power of attorney documents attached as exhibits to the Complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). (In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

[11] N.J. Stat. Ann. § 46:14-2.1 provides: the maker of the power of attorney "shall appear before an officer specified in N.J. Stat. Ann. § 46:14-6.14 and acknowledge that it was executed as the maker's own act." N.J. Stat. Ann. § 46:14-2.1. "The officer taking an acknowledgment or proof shall sign a certificate stating that acknowledgment or proof," and the certificate must also state: "(1) that the maker or the witness personally appeared before the officer; (2) that the officer was satisfied that the person who made the acknowledgment or proof was the maker of or the witness to the instrument; (3) the jurisdiction in which the acknowledgment or proof was taken; (4) the officer's name and title;

ii.    **The POAs Confer ERISA Standing on Dr. Redstone and Dr. Lee**

The Court finds the reasoning of *Abramson, Somerset Orthopedic*, and *Atlantic Neurosurgical Specialists P.A.* more persuasive.[12] As noted by those courts, "individual physicians may, in some circumstances, act as attorneys-in-fact on behalf of their patients, even in the face of valid, unambiguous anti-assignment clauses." *Abramson*, 2023 WL 3199198, at *6 (citing *American Orthopedic*, 890 F.3d at 455; *Somerset Orthopedic*, 2021 WL 3661326, *4; *Med-X Glob.*, 2018 WL 4089062, at *2 n.2). "Indeed, the Third Circuit has 'left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf, for most out-of-network providers,' regardless of any anti-assignment clause." *Abramson*, 2023 WL 3199198, at *7 (citing *Plastic Surgery Ctr.*, 967 F.3d at 228–29); *see also Enlightened Solutions*, 2018 WL 6381883, at *5 (stating that one "teaching" of the Third Circuit's decision in *American Orthopedic* is that "a valid anti-assignment clause does not preclude a medical provider who holds a valid power of attorney from asserting the participant's claims against the ERISA plan.").

Courts in this District have found that a valid power of attorney can, under the appropriate circumstances, trump an unambiguous anti-assignment clause in an ERISA plan. In such cases, our courts instruct that two factors must be adequately pled, the complaint must: (1) allege the physician-plaintiffs asserted claims as attorneys-in-fact on behalf of their patients; and (2) state the specific dollar amount owed to each patient. *Abramson*, 2023 WL 3199198, at *7. Here, while the Complaint sufficiently alleges the physician plaintiffs are asserting claims as attorneys-in-fact on

---

(5) the date on which the acknowledgment was taken." *Id.* Aetna does not contest that "the POAs technically comply with New Jersey and Florida requirements that an individual serve as an attorney-in-fact." (Defs.' Br. at 18 n.9).

[12] In *Atlantic Neurosurgical Specialists P.A.*, the Court also noted that the Third Circuit's decision in *American Orthopedic & Sports Med.*, 890 F.3d 445 (3d Cir. 2018), "cannot be read to preclude the physician plaintiffs from asserting claims on behalf of the Patients in the manner alleged in the PFAC" (*i.e.*, by indicating the claims were brought on behalf of patients in the complaint). 2022 WL 970317, at *8.

behalf of their patients D.R. and C.F. (Compl. (caption), ¶¶ 11, 13), the Complaint fails to state the specific dollar amount owed to each patient (Compl. ¶¶ 24, 33). Further, the Complaint does not delineate the amount allegedly owed after partial payment, leaving the Court to do the math (*Id.*). Thus, it fails to satisfy one of the considerations set forth in *Somerset Orthopedic*, 2021 WL 3661326 at *5 and *Atl. Neurosurgical Specialists P.A.*, 2022 WL 970317, at *8. *Accord, Abramson*, 2023 WL 3199198, at *8 (applying "the general test articulated in *Somerset* and *Atlantic Neurosurgical Specialist P.A.*").[13]

D.R. and C.F. each have ownership of their claims and "may confer authority, pursuant to a valid power of attorney, upon an attorney-in-fact, . . . , to pursue a claim on [their] behalf.[14] The anti-assignment clause in D.R. or C.F.'s Plans have no more power "to strip [Dr. Redstone or Dr. Lee] of [their] ability to act as [D.R. or C.F.'s] agent than it does to strip [D.R. or C.F.] of [their] interest in [their] claim[s]." *American Orthopedic*, 890 F.3d at 455.

Accordingly, the Court finds Dr. Redstone and Dr. Lee have sufficiently alleged standing to sue for the ERISA based claims.

### C. Defendant Aetna Inc. is a Proper Party in this Action

Aetna contends that Plaintiffs "impermissibly lump together Aetna Inc. and ALIC and do not plead individualized allegations against them[,]" that Aetna, Inc., is not a proper party to this

---

[13] The Court notes that the precise language of D.R.'s POA at issue here was deemed a "valid, rule compliant power of attorney" by the *Abramson* Court which as detailed above, denied the motion to dismiss because "[t]he Complaint sufficiently allege[d] that Dr. Abramson [wa]s asserting the claim for benefits on B.H.'s behalf . . . and state[d] the amount B.H. remain[ed] responsible after the alleged emergency services." *Abramson*, 2023 WL 3199198, at *8. However, the Court recognizes, that same POA language was deemed an assignment in *Tamburrino v. UnitedHealth Grp. Inc.*, No. 21-12766, 2022 WL 1213467, at *3 (D.N.J. Apr. 25, 2022). However, like the *Abramson* Court, this Court finds that the Complaint sufficiently alleges that Dr. Redstone and Dr. Lee are asserting the claim for benefits on D.R. and C.F.'s behalf and the POAs exist independent of any anti-assignment language. *Abramson*, 2023 WL 3199198, at *8; *see also Atlantic Neurosurgical Specialists P.A.*, 2022 WL 970317, at *8-9.

[14] The Court further notes that the POAs "fail[] to function as [] typical power[s] of attorney because Plaintiff[s] seek[] to collect payment from [D.R. and C.F.'s] insurance company, and 'not to act on [D.R. and C.F.'s] behalf in a broader capacity to encompass other ERISA-based claims that are not barred by the anti-assignment clause.'" *Pers. Image, PC v. Tech Briefs Media Grp. Med. Plan*, No. 20-3747, 2021 WL 486905, at *4 n.5 (D.N.J. Feb. 10, 2021) (quoting *Enlightened Solutions*, 2018 WL 6381883, at *16-17). Plaintiffs will need to cure this deficiency.

action, and that courts in this District have routinely found Aetna, Inc., is an improper party to ERISA actions. (Defs.' Br. at 21-22).

For a Section 502(a)(1)(B) claim, "the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Emp. Benefit Plan*, 311 F. App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)). "Exercising control over the administration of benefits is the defining feature of the proper defendant under 29 U.S.C. § 1132(a)(1)(B)." *Id.*; *Atlantic Orthopedic Assoc., LLC v. Blue Cross and Blue Shield of TX and ExpressJet Airlines*, No. 15-1854, 2016 WL 889562, at *6 (D.N.J. Mar. 7, 2016) ("The key is the exercise of discretion."). For a claim pursuant to § 502(a)(3), a plan fiduciary is a proper defendant. *Tamburrino*, 2022 WL 1213467, at *6.

A parent company is not liable for the alleged fiduciary breaches of its subsidiary. *Lutz Surgical Partners*, 2021 WL 2549343, at *3. And it is insufficient to allege merely that corporations are affiliates to hold them liable for another's breach. *Tamburrino*, 2022 WL 1213467, at *6 (explaining that the allegations that the defendants "'played a role' in the creation and implementation of the co-surgeon reimbursement policy [were] insufficient to plead ERISA claims against them under §§ 1132(a)(1)(B) and 1132(a)(3)" in the absence of allegations that the defendants were plan administrators or fiduciaries).

Here, the Complaint alleges that:

> Either directly or through its wholly-owned and controlled subsidiaries, Aetna, Inc. issues and administers health insurance plans and is delegated responsibility to make benefit determinations pursuant to those plans. As such, Aetna, Inc. is a fiduciary under ERISA regarding the claims at issue in this litigation.

(Compl. ¶ 14). The Complaint further provides that:

> Aetna Life Insurance Company, *acting directly and on behalf of and under the supervision and direction of Aetna, Inc.*, is also a fiduciary under ERISA regarding the claims at issue in this litigation.

(*Id.* ¶ 15) (emphasis added). These precise allegations were previously found sufficient to "plausibly allege that Aetna, Inc. is a proper defendant at this time." *Shapiro v. Aetna, Inc.*, No. 22-1958, 2023 WL 4348601, at *9 (D.N.J. June 5, 2023). The *Shapiro* Court further found unavailing, Aetna's identical argument that "courts in this district routinely find that Aetna, Inc. is a brand holding company and an improper party to ERISA actions." (Mov. Br. at 22 (citing *Premier Orthopedic Assoc. of S. NJ, LLC v. Aetna, Inc.*, No. 20-11641, 2021 WL 2651253, at *1 n.1 (D.N.J. June 28, 2021)); *Lutz Surgical Partners*, 2021 WL 2549343, at 3-4). *Shapiro*, 2023 WL 4348601, at *9 ("[T]he findings of other courts on Aetna, Inc.'s role in different ERISA plans is not relevant to Aetna, Inc.'s role in the at-issue Plans."). "Accordingly, accepting the allegations of the Complaint as true, Plaintiffs have sufficiently alleged that Aetna, Inc. is a proper defendant at this stage in the litigation." *Id.*

### D. The Complaint Fails to Adequately Specify Claims for Benefits Under Section 502(a)(1)(B) of ERISA

The Court next addresses Defendants' assertion that Plaintiffs fail to adequately specify which plan provisions Defendants allegedly violated. (Defs.' Br. at 24). Plaintiffs contend "the Complaint provides a specific reference to the plans through which both D.R. and C.F. seek benefits here." (Pls.' Br. at 22-23; Pls.' Supp. Br. at 3). The Court disagrees.

Under Section 502(a)(l)(B), a civil action may be brought "to recover benefits due to [participants or beneficiaries] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *See Atlantic Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 WL 5630030, at *7 (D.N.J. Oct. 31, 2018) (quoting *Pascack Valley Hosp. Inc. v. Local 464A*

*UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). To state a claim for relief under Section 502(a)(1)(B), a plaintiff must establish his or her "'right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006); *see also Mwwmg v. Sanof Avenfjs, U.S. Inc.*, No. 11-1134, 2012 WL 3542284, at *3 (M.D. Pa. Aug. 14, 2012) ("To state a claim under § 502(a)(l)(B), plaintiff must allege that she was eligible for benefits under the Plan, that defendant wrongfully denied her benefits and that in doing so, defendant violated § 502(a)(l)(B)."). In order to plead sufficient facts to state a claim for relief, the plaintiff must identify a specific provision of the plan from which a court can infer this legally enforceable right. *See, e.g., Metropolitan Neurosurgery v. Aetna Life Ins. Co.*, No. 22-0083, 2023 WL 5274611, at *4 (D.N.J. Aug. 16, 2023); *Atlantic Plastic Hand Surgery, P.A. v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018); *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022); *University Spine Ctr. v. Edward Don & Co., LLC*, No. 22-3389, 2023 WL 4841885, at *6 (D.N.J. July 28, 2023).

Here, as Plaintiffs acknowledge (Pls.' Br. at 22-23), the only references in the Complaint to D.R. and C.F.'s plans are the following:

> The insurance card D.R. presented to Dr. Redstone's office contains the NAP logo. And the Summary Plan Document ("SPD") summarizing the benefits available to M.D. under her plan at the time she sought care from Dr. Redstone specifically acknowledges the plan's participation in the NAP program as a NAP Plan: "If your ID card displays the National Advantage Program (NAP) logo, the recognized charge is the rate we have negotiated with your NAP provider. Your out-of-network cost sharing applies when you get care from NAP providers, except for emergency services. A NAP provider is a provider with whom we have a contract through any third party that is not an affiliate of Aetna or through the Coventry

> National or First Health Networks. However, a NAP provider listed in the NAP directory is not a network provider.

(Compl. ¶ 20).

> Similarly, for C.F., the Complaint alleges:

> The insurance card C.F. presented to Dr. Lee's office contains the NAP logo and the Beech Street logo. And the Summary Plan Document ("SPD") summarizing the benefits available to C.F. under her plan at the time she sought care from Dr. Lee specifically acknowledges the plan's participation in the NAP program as a NAP Plan: "If your ID card displays the National Advantage Program (NAP) logo your cost may be lower when you get care from a NAP provider. . . . If NAP does not apply to you, the recognized charge for specific services or supplies will be the out-of-network plan rate set forth in the above chart.

(Compl. ¶ 30).

The Complaint is devoid of specific plan provisions demonstrating that the benefits are due. *Hoover*, 465 F.3d at 574. Plaintiffs cite to the definition of "NAP" contained in their plans. (Pls.' Br. at 23). However, a definition does not endow a member with coverage—the substantive plan provisions do. The definition merely provides that a NAP charge is a "rate . . . negotiated with [a] NAP provider" and that "out-of-network cost sharing applies when you get care from NAP providers. . . ." (Compl. ¶¶ 20, 30). Additionally, C.F.'s Summary Plan Document explicitly states, "your cost *may* be lower when you get care from a NAP provider. . . ." (Compl., ¶ 30) (emphasis added). Far from citing a concrete plan provision, the language C.F. relies on is conditional: "may" be lower. Moreover, contrary to the Complaint (Compl., ¶ 13), Defendant asserts C.F. possessed a plan that did not provide NAP coverage. (Defs.' Br. at 12 (citing Linder Decl., ¶ 17, Ex. C); *see also* Defs.' Rep. Br. at 4).

Plaintiffs fail to identify any specific plan provisions entitling payment of benefits. *Atlantic Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *7; *see also Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996) ("Only the words of the Plan itself can create an entitlement to benefits.").

21

"Moreover, several courts in this circuit have dismissed denial of benefits claims for failure to allege the specific provision violated in an ERISA-governed plan." *See, e.g., Atlantic Plastic & Hand Surgery, PA*, 2018 WL 5630030, at *8 (citing *Piscopo v. Public Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015) (dismissing an ERISA claim because the plaintiff had "not pointed to any provision of a [ ] benefit plan suggesting he is entitled to pension or retirement contributions nor has he alleged any facts about the plan"), *aff'd*, 650 F. App'x 106, 110 (3d Cir. 2016) (affirming dismissal of an ERISA claim for failure to provide details concerning "the plan, or provision showing that [the plaintiff] is entitled to retirement benefits."); *Atlantic Plastic Hand Surgery, P.A.*, 2018 WL 1420496, at *10 (dismissing an ERISA claim because the complaint failed "to identify any specific provision in the Plan from which the [c]ourt can infer that [the] [p]laintiffs were entitled to compensation at the 'usual and customary rate' for out-of-network medical services")); *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, No. 20-13834, 2022 WL 17582546, at *2 (D.N.J. December 12, 2022) (noting the plaintiffs' proposed second amended complaint "now includes the information that I found was required to allege a sufficient injury-in-fact to establish Article III standing—"specific references to the portions of the Patients' plans that entitle the Patients to the benefits they claim they are entitled to"); *Advanced Ortho. and Sports Med. Instit. o/b/o Patient MS v. Anthem Blue Cross Life and Health Ins. Co.*, No. 21-12397, 2022 WL 993329, *4 (D.N.J. Apr. 1, 2022) ("Advanced Orthopedics fails to specify in its Complaint 'which actual portions of the plans were violated, when they were violated, or how they were violated.'") (quoting *LeMoine v. Empire Blue Cross Blue Shield*, No. 16-6786, 2018 WL 1773498, at *6 (D.N.J. Apr. 12, 2018)); *Abramson*, 2023 WL 3199198, at *11 ("[T]he [c]omplaint fails to identify any [p]lan provision that requires Aetna to pay B.H. and/or Dr. Abramson at the amount claimed. Such an allegation is required for Dr.

22

Abramson's cause of action to be sustained"); *K.S. v. Thales USA, Inc.*, No. 17-7489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019) ("[S]everal . . . decisions from this District have granted motions to dismiss in instances where a plaintiff has failed to tie his or her allegations of ERISA violations to specific provisions of an applicable plan."). Without specifying any terms of the Plan that were violated, the "Complaint contains little more than an assertion" that [Dr. Redstone and Dr. Lee] are owed more than [they were] paid for the services [they] provided." *Complete Foot & Ankle v. Cigna Health & Life Ins. Co.*, No. 17-13742, 2018 WL 2234653, at *2 (D.N.J. May 16, 2018). Accordingly, the Complaint fails to adequately specify claims for benefits under section 502(a)(1)(B) of ERISA.

### E.  Whether Plaintiffs' Section 502(a)(3)[15] Claim (Count II) Should Be Dismissed

Defendants next argue that courts in this District dismiss a Section 502(a)(3) claim "where it is clear from the face of the complaint that the denial of benefits claim and the claim for equitable relief share the same factual basis." (Defs.' Br. at 29).  Defendants assert that the Court should dismiss Count II on this basis. (*Id.* at 31). Plaintiffs counter that "there is a consensus among the courts in this District that dismissing claims under Section 502(a)(3) as 'duplicative' of claims brought under Section 502(a)(1)(B) at the pleadings stage is premature." (Pls.' Br. at 37). Plaintiffs further assert that they do not seek the exact same relief in Counts II and III, which are plead in the alternative. (*Id.* (citing ¶¶ 55, 58).

Following the Supreme Court's ruling in *Varity Corp. v. Howe*, Plaintiffs cannot recover under both §§ 502(a)(1) and 502(a)(3). 516 U.S. 489, 512 (1996) (explaining that § 502(a)(3) is one of two "'catchall' provisions" which "act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy"); *Freitas v.*

---

[15] 29 U.S.C. § 1132(a)(1)(B).

*Geisinger Health Plan*, 542 F.Supp.3d 283, 310-311 (M.D. Pa. 2021) ("Courts interpreting *Varity* all agree that a beneficiary may not ultimately recover under both § 502(a)(1) and § 502(a)(3)."). There is a split among the Circuits, however, regarding whether plaintiffs are precluded from pleading claims under both Sections 502(a)(1) and 502(a)(3), in the alternative. *Freitas*, 542 F. Supp. at 311 n.142 (explaining that the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits all appear to preclude alternatively pleading claims under §§ 502(a)(1) and 502(a)(3), but the Second Circuit has allowed it). The Third Circuit has not ruled on the issue, and courts in this District are split. *Id.*

The Third Circuit has noted that "a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks 'appropriate equitable relief.'" *Ream v. Frey*, 107 F.3d 147, 152–53 (3d Cir. 1997). Some courts in this District have held that *Varity* and *Ream* caution against applying §§ 502(a)(1) and 502(a)(3) in a way that allows for double recovery, but that it is nonetheless premature to dismiss § 502(a)(3) claims alleged in the alternative on a motion to dismiss, before it is clear whether the plaintiff may attain adequate relief under § 502(a)(1). *See, e.g.*, *Unviersity Spine Cntr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 16-9253, 2017 WL 3610486, at *4 (D.N.J. Aug. 22, 2017) ("Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a breach of fiduciary duty claim as duplicative of a benefits claim is generally not appropriate on a motion to dismiss."); *Somerset Orthopedic Assocs., P.A. v. Aetna, Inc.*, No. 19-12544, 2019 WL 13535769, at *4 (D.N.J. Oct. 24, 2019) ("This Court—following the persuasive approach of the courts in *Shah M.D.*, *Martin*, *Segura*, and *Bell*—does not read *Varity* as stating a bright-line rule precluding the assertion of alternative claims under §§ 502(a)(1)(B) and 502(a)(3) at the motion to dismiss stage . . . . Instead, at the motion-to-dismiss stage, Plaintiffs can properly plead, as an alternative to their claim for

benefits, that Defendant breached its fiduciary duties of loyalty and care under ERISA.") (cleaned up); *University Spine Ctr. v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-8711, 2018 WL 678446, at *2 (D.N.J. Feb. 2, 2018) ([T]his Court finds that "[i]t is too early in these proceedings to decide whether Plaintiff is contractually entitled to benefits under the Plan. If Plaintiff is not entitled to benefits under the Plan, Plaintiff might still be entitled to 'other appropriate equitable relief' to remedy any breaches of fiduciary duty by Defendants."); *Lipstein v. United Healthcare Ins. Co.*, No. 11-1185, 2011 WL 5881925, at *3 (D.N.J. Nov. 22, 2011) ("The Court is persuaded by the reasoning of those courts that have found that *Varity* does not establish a bright line rule precluding the assertion of alternative claims under §§ 502(a)(1)(B) and 502(a)(3) at the motion to dismiss stage."); *Shah v. Aetna*, No. 17-195, 2017 WL 2918943, at *2 (D.N.J. July 6, 2017) (collecting cases); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7759, 2018 WL 4089063, at *2 (D.N.J. Aug. 27, 2018).

Other courts have found that—in light of both *Varity* and *Ream*—Section 502(a)(3) claims alleged in the alternative to § 502(a)(1) claims should be dismissed, particularly where such claims are duplicative. *See, e.g., Plastic Surgery Ctr. P.A. v. Cigna Health and Life Insurance Co.*, No. 17-2055, 2018 WL 2441768, at *13-14 (D.N.J. May 31, 2018) (explaining the inter and intra Circuit split and finding that dismissal was warranted where the plaintiff's claims under § 502(a)(3) were "wholly duplicative" of its claims under § 502(a)(1)); *In re Aetna UCR Litig.*, No. 07-3541, 2015 WL 3970168, at *16 (D.N.J. June 30, 2015) ("[P]laintiffs cannot avoid dismissal merely by labelling their claim for unpaid benefits as one for prospective, equitable relief. They fail to adequately distinguish their claim under Section 502(a)(3) from their claim for benefits under Section 502(a)(1)(B), and as a consequence counts IV and V are dismissed"); *Change v. Life Ins. Co. of N. Am.*, No. 09-0019, 2008 WL 2478379, at *4 (D.N.J. June 17, 2008) ("The Court agrees

that *Varity* should not be read as imposing a bright-line prohibition on Section 502(a)(3) claims when Section 501(a)(1)(B) are also set forth. But Plaintiff's Count II appears to be nothing more than an attempt to couch the request for relief it had previously set forth in Count I in the language of equity.").

The Court agrees with Plaintiffs, and with other courts in this District, that dismissal of Plaintiffs § 502(a)(3) claim as "duplicative" of claims brought under § 502 (a)(1)(B) when the plaintiff seeks other appropriate equitable relief under § 502(a)(3) is premature at the motion to dismiss stage. *See Atlantic Neurosurgical Specialists P.A.*, 2022 WL 17582546, at *9; *University Spine Ctr.*, 2018 WL 4089063, at *2; *Lipstein*, 2011 WL 5881925, at *3; *Shah v. Aetna*, 2017 WL 2918943, at *2; *University Spine Ctr.*, 2018 WL 678446, at *2. However, "Defendants may renew this challenge to the redundancy of Plaintiff[s'] claims on summary judgment, and at that time it will be Plaintiff[s'] burden to distinguish" their claims under §§ 502(a)(1) and 502(a)(3). *University Spine Ctr.*, 2018 WL 4089063, at *2.

Defendants next argue that the relief sought in Count II under § 502(a)(3) is not equitable in nature. (Defs.' Br. at 27-28) ("Count II of the Complaint. . .is a claim for monetary relief disguised as a request for an injunction."). As Defendants recite in their brief, however, Plaintiffs' prayer for relief seeks the "Court enter a judgment '[o]rdering Aetna to repay all class members, with interest, for the amount of benefits denied as a result of Aetna's ERISA violations as alleged herein or, alternatively, ordering Aetna to reprocess all wrongfully denied appeals in compliance with plan terms and without the improper reductions described herein.'" (Defs.' Br. 27 (Compl. prayer for relief)). As noted by the *Shapiro* Court in addressing this same argument, "a reprocessing order is an appropriate form of equitable relief for ERISA actions." *Shapiro*, 2023 WL 4348601, at *7 (citing *DeMaria v. Horizon Healthcare Services, Inc.*, No. 11-7298, 2015 WL

26

3460997, at *5 (D.N.J. June 1, 2015) (certifying the class and finding that a reprocessing order was the only relief available to the class)).

Moreover, as in *Shapiro*, the specific language in the Complaint in Count II is equitable in nature and pleads its § 502(a)(3) claim in the alternative as Plaintiffs are entitled to do. The Complaint states Count II "is brought pursuant to ERISA, 29 U.S.C. § 1132(a)(3)(A), *to enjoin Aetna's acts and practices*, as detailed herein. Plaintiff[s] bring[ ] this claim only to the extent that the Court finds that the *injunctive relief* sought is unavailable pursuant to § 1132(a)(1)(B)." (Compl. ¶ 55) (emphasis added). *See Shapiro*, 2023 WL 4348601, at *6; *see also Atlantic Neurosurgical Specialists P.A.*, 2022 WL 17582546, at *9.

Accordingly, Plaintiffs' claim under § 502(a)(3)(A) in Count II may proceed.

## F.  The Court Grants Aetna's Motion for Leave to File Supplemental Authority

The Court next addresses Defendants' motion for leave to file notice of supplemental authority in further support of Aetna's motion to dismiss (ECF No. 35) and its motion to strike Plaintiffs' opposition (ECF No. 37).[16]

> Generally, if pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority; however, a Notice of Supplemental Authority should not advance new arguments that were absent from the movant's complaint.

---

[16] The Court denies Defendants' motion to strike Plaintiffs' opposition (ECF No. 36) to Defendants' motion for leave to file supplemental authority because Plaintiffs' opposition addresses the *Lipani* decision and advances several arguments as to why Plaintiffs believe *Lipani* was decided in error. Thus, Plaintiffs' opposition was properly limited to arguing only why the Court here should not consider *Lipani*, and if inclined to do so, why *Lipani* should not be followed. (ECF No. 36). Additionally, as noted, the *Lipani* Court recently decided plaintiff Lipani's motion for reconsideration, which renders both Defendants' motion and Plaintiffs' opposition moot since the *Lipani* Court clarified its analysis, and such subsequent decisions can be considered by the Court independent of the parties.

*Atkins v. Capri Training Center, Inc.*, No. 13-06820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014) (citing *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255 (3d Cir. 2008) (citing Fed. R. App. P. 28(j)).

Defendants requested leave for the Court to consider *Lipani v. Aetna Life Insurance Company*, No. 22-02634 (D.N.J. May 30, 2024), which was decided two days after Defendants filed their supplemental standing brief. Defendants point the Court to a passage of the opinion in which the court "held that a medical provider may only use a purported power of attorney to circumvent a valid anti-assignment provision in 'appropriate circumstances,'" which confined "appropriate circumstances" to examples the Third Circuit expressly set forth in *American Orthopedic*. In *Lipani*, the Court stated that:

> [A]lthough the Third Circuit has not foreclosed that possibility, it has limited such appropriate circumstances to, for example, cases where "patients must rely on their agents when they anticipate even short-term incapacitation after medical procedures, and where those who anticipate longer-term unavailability, like deployed service members or those suffering from progressive conditions, depend on their designated agents to handle their medical claims and other affairs in their absence." *Am. Orthopedic*[], 890 F.3d [at] [],455 []. Not only does Dr. Lipani fail to argue how the facts alleged in the Amended Complaint present such a circumstance,. . .but the Amended Complaint itself is bereft of any allegations that come close to the examples provided by *American Orthopedic*. There is no allegation of incapacity on the part of A.T., or that A.T. cannot otherwise bring this lawsuit herself.

*Lipani*, No. 22-2634, 2024 U.S. Dist. LEXIS 96633, at *11. On January 6, 2025, subsequent to the *Lipani* Court's May 30, 2024 decision, the court addressed a motion for reconsideration filed by plaintiff Lipani. *Lipani v. Aetna Life Ins. Co.*, No. 22-2634, 2025 WL 32791 (D.N.J. January 6, 2025). In its recent reconsideration opinion, the court reiterated its holding but clarified that the examples provided in *American Orthopedic* are not exhaustive, stating "[p]laintiff is correct that these are not limiting examples." *Lipani*, 2025 WL 32791, *4. This is in line with other cases in

the District, which have similarly determined the enumerated circumstances in *American Orthopedic* to be non-exhaustive. *Abramson*, 2023 WL 3199198, at *6-7 (citing *Somerset Orthopedic*, 2021 WL 3661326 at *4 (clarifying that uses of a power of attorney are not limited to those circumstances)); *see also id.* (citing *Plastic Surgery Ctr.*, 967 F.3d at 228-29 (the Third Circuit has "left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf, for most out-of-network providers," regardless of any anti-assignment clause)). Here, the Court follows the consensus view that the circumstances provided in *American Orthopedic* are non-exhaustive. Thus, the May 30, 2024 *Lipani* decision, given the court's subsequent clarification, is not impactful to the Court's analysis here and not a basis to deem D.R. or C.F.'s POA invalid for failure to allege one of the enumerated exceptions.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED in part**, and the Complaint is **DISMISSED without prejudice**.    An appropriate Order accompanies this Opinion.


DATED: March 18, 2025                    **JULIEN XAVIER NEALS**
                                         United States District Judge