**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JEREMIAH REDSTONE, M.D., as an authorized representative and attorney-in-fact of his patient D.R., and WAYNE LEE, M.D., as an authorized representative and attorney-in-fact of his patient C.F., on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AETNA, INC. and AETNA LIFE INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 21-19434 (JXN)(JBC)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendants Aetna, Inc. and Aetna Life Insurance Company's ("Aetna Life") (collectively, "Aetna") motion to dismiss Plaintiffs'[1] amended class action complaint under Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 59.) Plaintiffs opposed (ECF No. 62), and Defendants replied (ECF No. 63). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Aetna's motion to dismiss is **DENIED**.

---

[1] Plaintiffs collectively refer to Jeremiah Redstone, M.D. ("Redstone") as an authorized representative and attorney-in-fact for his patient, D.R., and Wayne Lee, M.D. ("Lee"), as an authorized representative and attorney-in-fact for his patient, C.F.

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.     BACKGROUND

### A.     Statement of Facts

Aetna, Inc. issues and administers health insurance plans ("Plans"). (*See* Am. Compl. ¶¶ 1, 14, ECF No. 51.) Aetna Life is a subsidiary of Aetna, Inc. (*Id.* ¶ 15.) D.R. and C.F. are insured through Plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. (*Id.* ¶¶ 1, 11, 13.)

The Plans distinguish between services provided by in-network and out-of-network providers. (*Id.* ¶ 2.) In-network providers have contracts with Aetna to provide services at discounted rates. (*Id.*) The discounted rate is the full amount the patient will pay for an in-network service. (*Id.* ¶ 3.) Out-of-network services work differently. Because out-of-network providers have no pre-existing contracts with Aetna, the amount Aetna pays them varies by Plan. (*Id.*) Some plans pay out-of-network providers the applicable Medicare reimbursement rate; others pay the "usual, customary, and reasonable" rate charged for the service. (*Id.*) The amount Aetna pays out-of-network providers is usually less than what they charged the patient. So, out-of-network providers often bill patients for the difference between the charge and what Aetna paid (referred to as "balance billing"). (*Id.* ¶ 7.)

To help reduce the costs of out-of-network services, Aetna established the National Advantage Program ("NAP"). (*Id.* ¶ 4.) Three interlocking contracts form the NAP. (*See id.* ¶¶ 4, 7.) First, national third-party vendors (which the parties call "NAP Vendors") contract with out-of-network providers, who agree to accept discounted rates for their services and not balance-bill patients. (*Id.* ¶¶ 4, 7.) Second, Aetna contracts with the NAP Vendors to access their out-of-network provider lists and contracted rates. (*Id.* ¶ 4.) Third, the sponsor of an Aetna Plan (such as an employer) opts into the NAP. (*Id.*)

2

Redstone and Lee are plastic surgeons (*see id.* ¶¶ 10, 12) who are not in Aetna's network (*see id.* ¶¶ 22, 36). Both doctors instead have contracts with Multiplan, a NAP Vendor doing business with Aetna. (*See id.*) Under their respective contracts with Multiplan, Redstone agreed to accept 85% of billed charges as full payment from NAP members (*Id.* ¶ 22); Lee agreed to accept 75% (*Id.* ¶ 36).

D.R. and C.F.'s Plans have NAP coverage. (*Id.* ¶¶ 20, 34.) Specifically, D.R.'s plan provides that "If your service was received from a NAP provider, a pre-negotiated charge will be paid. NAP providers are out-of-network providers that have contracts with Aetna, directly or through third-party vendors, that include a pre-negotiated charge for services." (*Id.* ¶ 21; Pls.' Ex. A ("D.R. Plan Summary") at 82–83, ECF No. 62-2.) Likewise, C.F.'s Plan Summary provides that, "[t]hrough NAP, the recognized charge is determined as follows." (Pls.' Ex. B ("C.F. Plan Summary") at 92, ECF No. 62-3.)

Redstone and Lee performed breast reconstruction surgery on D.R. and C.F., respectively. (Am. Compl. ¶¶ 25–26, 39–40.) Plaintiffs allege the doctors received prior authorization from Aetna for those procedures. (*Id.*) Redstone billed Aetna $226,630 for D.R.'s surgeries. (*Id.* ¶ 27.) According to Redstone, Aetna "approved those claims for payment," but paid only $20,149.23— far less than the 85% NAP rate. (*Id.*) Redstone appealed several times. (*Id.* ¶ 29.) Aetna, however, "upheld its prior payment determinations based on Dr. Redstone's [out-of-network] status with Aetna." (*Id.*) Likewise, Lee billed Aetna $102,000 for C.F.'s surgeries. (*Id.* ¶ 40.) He alleges Aetna approved the claim for payment but applied only $5,559.37 to C.F.'s deductible and paid Lee nothing. (*Id.*) Lee filed appeals, which Aetna denied. (*Id.* ¶¶ 42–45.) Plaintiffs allege that if Aetna refuses to reimburse Redstone and Lee at their NAP rates, D.R. and C.F. will be deprived "of the protection from balance-billing set forth in" their NAP Plans. (*Id.* ¶¶ 32, 48.)

3

D.R. executed an "Authorized Representative Request" and "New Jersey Durable Power of Attorney," both in favor of Redstone. (*Id.* ¶ 11.) Likewise, C.F. executed an "Assignment of Benefits/Designated Authorized Representative/Limited Special Power of Attorney" and a "Limited Durable Power of Attorney," both in favor of Lee. (*Id.* ¶ 13.)

**B.    Procedural History**

In October 2021, Redstone and Lee filed a putative class action on behalf of D.R., C.F., and all similarly situated patients. (*See* Compl., ECF No. 1.) The Complaint alleged Aetna violated several provisions of ERISA. (*Id.*) Plaintiffs sought monetary relief under ERISA § 502(a)(1)(B),[3] injunctive relief under § 502(a)(3)(A),[4] and equitable relief under § 502(a)(3)(B).[5] (*Id.*)

Aetna moved to dismiss (First Mot. to Dismiss, ECF No. 17), which the Court granted in part, *Redstone v. Aetna, Inc.*, No. 21-19434, 2025 WL 842514 (D.N.J. Mar. 18, 2025). First, the Court concluded Plaintiffs had Article III and ERISA standing, *id.* at *4–10, and that Aetna, Inc. is a proper defendant, *id.* at *10–11. Next, the Court dismissed Plaintiffs' § 502(a)(1)(B) claim without prejudice. *Id.* at *11–12. § 502(a)(1)(B) allows the participant or beneficiary of an ERISA plan "to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The Court, however, concluded "[t]he Complaint is devoid of specific plan provisions demonstrating that the benefits are due" for D.R. or C.F.'s surgeries. *Redstone*, 2025 WL 842514, at *12. Moreover, the Court found Plaintiffs failed "to identify any specific plan provisions entitling" D.R. or C.F. to the "payment of benefits" for their surgeries. *Id.* The Court then denied the motion to dismiss with respect to Plaintiffs' claims for injunctive and equitable relief. *Id.* at

---

[3] 29 U.S.C. § 1132(a)(1)(B).

[4] 29 U.S.C. § 1132(a)(3)(A).

[5] 29 U.S.C. § 1132(a)(3)(B).

*13–15. Aetna argued the Court should dismiss Plaintiffs' § 502(a)(3) claims as duplicative of the § 502(a)(1)(B) claim. *Id.* The Court disagreed, concluding "that dismissal of Plaintiffs § 502(a)(3) claim as 'duplicative' of claims brought under § 502 (a)(1)(B) when the plaintiff seeks other appropriate equitable relief under § 502(a)(3) is premature at the motion to dismiss stage." *Id.* at *14.

Plaintiffs filed an Amended Complaint in May 2025. (Am. Compl.) As in the Complaint, the Amended Complaint includes claims under ERISA §§ 502(a)(1)(B) (Count I), 502(a)(3)(A) (Count II), and 502(a)(3)(B) (Count III). (*See id.*) Aetna moved to dismiss. (Second Mot. to Dismiss, ECF No. 59.) Plaintiffs opposed (Pls.' Opp'n, ECF No. 62), and Aetna replied (Aetna Reply, ECF No. 63).

## II.    **LEGAL STANDARD**

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal

conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III.    <u>DISCUSSION</u>

#### A.    § 502(a)(1)

ERISA § 502(a)(1)(B) allows the participant or beneficiary of an ERISA plan "to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." To state a § 502(a)(1) claim, the plan participant must establish he or she has "'a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)). "Only the words of the Plan itself can create an entitlement to benefits." *Hein v. F.D.I.C.*, 88 F.3d 210, 215 (3d Cir. 1996). Therefore, the plaintiff "must identify a specific provision of the plan from which a court can infer this legally enforceable right." *Redstone*, 2025 WL 842514, at *11 (collecting cases).

Here, Plaintiffs rely on the definition of "Recognized Charge" in the Plan Summaries to show a legal entitlement to benefits. D.R.'s Plan Summary defines "Recognized Charge" as:

> The amount of an out-of-network provider's charge that is eligible for coverage. You are responsible for all amounts above what is eligible for coverage.

> If your ID card displays the National Advantage Program (NAP) logo your cost may be lower when you get care from a NAP provider.

> Through NAP, the recognized charge is determined as follows:

> - If your service was received from a NAP provider, a pre-negotiated charge will be paid. NAP providers are out-of-network providers that have

> contracts with Aetna, directly or through third-party vendors, that include a pre-negotiated charge for services.
> - If your service was not received from a NAP provider, a claim specific rate or discount may be negotiated by Aetna or a third-party vendor.

(D.R. Plan Summary at 82–83.)

Likewise, C.F.'s Plan Summary defines "Recognized Charge" as:

> The amount of an out-of-network provider's charge that is eligible for coverage. You are responsible for all amounts above what is eligible for coverage.

> If your ID card displays the National Advantage Program (NAP) logo your cost may be lower when you get care from a NAP provider. Through NAP, the recognized charge is determined as follows:

(C.F. Plan Summary at 92.)

In the original complaint, Plaintiffs cited Plan language stating that "your cost *may* be lower." (*See* Compl. ¶¶ 20, 30 (emphasis added).) However, the provisions identified in the Amended Complaint operate in mandatory terms: "[i]f your service was received from a NAP provider, a pre-negotiated charge *will* be paid," (D.R. Plan Summary at 83 (emphasis added)), and that "[t]hrough NAP, the recognized charge *is* determined as follows," (C.F. Plan Summary at 92 (emphasis added)). From this mandatory language, wherein Aetna says it *will* pay NAP providers a pre-negotiated rate, the Court can infer Plaintiffs have a legal entitlement to benefits.[6]

---

[6] Relying on *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), Aetna argues that Plaintiffs' citations to the Plan Summaries "do[es] not remedy their failure to identify substantive plan provisions." (Second Mot. to Dismiss at 12.)

Aetna's reliance on *Amara* is misplaced. To be sure, in *Amara*, the Supreme Court concluded that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." 563 U.S. at 438. But, as the Tenth Circuit noted in *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, *Amara* stands for either of two propositions: "(1) the terms of the [Plan Summaries] are not enforceable when they conflict with governing plan documents, or (2) the [Plan Summaries] cannot create terms that are not also authorized by, or reflected in, governing plan documents." 663 F.3d 1124, 1131 (10th Cir. 2011). Several courts in this District have followed the *Eugene S* approach. *See Ho v. Goldman Sachs & Co. Grp. Long Term Disability Plan*, No. 13-6104, 2016 WL 8673067, at *9 (D.N.J. Oct. 28, 2016) (collecting cases); *Conn. Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*, No. 12-05941, 2013 WL 5354216, at *2–3 (D.N.J. Sept. 24, 2013). This Court does also.

Plaintiffs are not trying to use the Plan Summaries to create new terms inconsistent with their Plans. Instead, Plaintiffs allege the Plan Summaries correctly reflected the terms at issue in the Plans. And, because the Court accepts Plaintiffs' factual allegations as true on a motion to dismiss, *Amara* does not warrant dismissal.

Therefore, taking the Amended Complaint's well-pled factual allegations as true, Plaintiffs adequately allege that: (1) Aetna approved D.R. and C.F.'s out-of-network surgeries for coverage (Am. Compl. ¶¶ 25–26, 39–40); (2) Redstone and Lee participated in Aetna's NAP through Multiplan[7] (*see id.* ¶¶ 22, 36); (3) D.R. and C.F.'s plans required Aetna to pay Redstone and Lee at NAP rates (D.R. Plan Summary at 82–83; C.F. Plan Summary at 92); and (4) Aetna failed to do so (Am. Compl. ¶¶ 27, 40).

Because the Amended Complaint pleads enough facts for the Court to reasonably infer that Aetna violated ERISA § 502(a)(1)(B), the Court **denies** the motion to dismiss Count I.

**B.    § 502(a)(3)**

ERISA § 502(a)(3) allows a participant, beneficiary, or fiduciary to bring a civil action to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Count II of the Amended Complaint is a claim under § 502(a)(3)(A) to "enjoin Aetna's acts and practices . . .  only to the extent that the Court finds that the injunctive relief sought is unavailable pursuant to [§ 502(a)(1)(B)]." (Am. Compl. ¶¶ 62–64.) Count III is a claim under §

---

[7] In support of its motion to dismiss the Amended Complaint, Aetna references the agreement between Aetna and Multiplan ("Multiplan Agreement") and a declaration it submitted in support of its first motion to dismiss ("Linder Declaration"). (*See* Defs.' Second Mot. to Dismiss 16–17; Defs.' First Mot. to Dismiss at *55–59 ("Multiplan Agreement"), ECF No. 17; Defs.' First Mot. to Dismiss at *49–53 ("Linder Decl."), ECF No. 17.) The Multiplan Agreement allows Aetna to unilaterally exclude providers from the NAP. (Multiplan Agreement § 7.4.) And, according to the Linder Declaration, Aetna removed Redstone and Lee from the NAP. (*See* Linder Decl. at *52.)

At the motion to dismiss stage, however, the Court "may not consider matters extraneous to the pleadings," except for documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The Linder Declaration is unquestionably extraneous to the Amended Complaint and was neither integral to nor explicitly relied upon by the Amended Complaint. So, the Court may not consider it.

Moreover, the Multiplan Agreement does not by itself warrant dismissal. Even if it was integral to or explicitly relied upon in the Amended Complaint, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler*, 578 F.3d at 210. Assuming, based upon the Multiplan Agreement alone, that Aetna removed Redstone and Lee from the NAP would construe the Amended Complaint in a light least favorable to Plaintiffs.

502(a)(3)(B) for "appropriate equitable relief, including but not limited to an appropriate monetary award based on disgorgement, restitution, surcharge, or other basis." (*Id.* ¶¶ 65–68.)

Aetna simply asserts that, because Plaintiffs' § 501(a)(1) claim fails, the § 503(a)(3) claims similarly fail. (Defs.' Second Mot. to Dismiss at 18.) But as discussed above, the § 501(a)(1) claim survives the motion to dismiss. In the same vein, so do Plaintiffs' § 503(a)(3) claims.[8] The Court, correspondingly, **denies** the motion to dismiss as to Counts II and III of the Amended Complaint

## IV. CONCLUSION

For the foregoing reasons, Aetna's motion to dismiss the Amended Complaint (ECF No. 59) is **DENIED**. An appropriate Order accompanies this Opinion.

DATED: 3/12/2026

JULIEN XAVIER NEALS
United States District Judge

---

[8] In any event, the Court concluded Counts II and III withstood the first motion to dismiss. *Redstone*, 2025 WL 842514, at *13–15. The Court need not revisit its earlier decision, especially considering the additional factual enhancement in the Amended Complaint.

9